2022-2012

## UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

OMEGA PATENTS, LLC,

*Appellant*,

V.

BMW OF NORTH AMERICA, LLC.,

*Appellee*.

*Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board, in No. IPR2021-00181*

## APPELLANT'S OPENING BRIEF

David S. Carus
Ryan T. Santurri
ALLEN, DYER, DOPPELT
 + GILCHRIST, PA
255 S. Orange Ave., Suite 1401
Orlando, FL 32801
Phone: (407) 841-2330
Fax: (407) 841-2343

*Attorneys for Appellant
Omega Patents, LLC*

**REPRESENTATIVE PATENT CLAIMS AT ISSUE ON APPEAL**

**U.S. PATENT 9,458,814**

1. A remote start control system for a vehicle comprising a data communications bus extending through the vehicle, an engine, at least one vehicle brake being selectively operable based upon a parking brake command on the data communications bus, and a vehicle climate control system operable based upon a climate control command on the data communications bus, the remote start control system comprising:

(A) a remote start transmitter remote from the vehicle and configured to generate a remote start signal; and

(B) a vehicle remote start controller at the vehicle and comprising

(C) a receiver configured to receive the remote start signal from said remote start transmitter, and

(D) at least one processor cooperating with said receiver and configured to, in response to the remote start signal,

(E) generate the parking brake command on the data communications bus to operate the at least one vehicle brake,

(F) generate the climate control command on the data communications bus to operate the climate control system, and

(G) start the engine.

14. A vehicle remote start controller for a vehicle comprising a data communications bus extending through the vehicle, an engine, at least one vehicle brake being selectively operable based upon a parking brake command on the data communications bus, and a vehicle climate control system operable based upon a climate control command on the data communications bus, the vehicle remote start controller comprising:

(A) a receiver configured to receive a remote start signal transmitter from a remote start transmitter remote from the vehicle; and

(B) at least one processor cooperating with said receiver and configured to, in response to the remote start signal,

(C) generate the parking brake command on the data communications bus to operate the at least one vehicle brake,

(D) generate the climate control command on the data communications bus to operate the climate control system, and

(E) start the engine.

24.  A method of operating a remote start control system for a vehicle comprising a data communications bus extending through the vehicle, an engine, at least one vehicle brake being selectively operable based upon a parking brake command on the data communications bus, and a vehicle climate control system operable based upon a climate control command on the data communications bus, the method comprising, in response to a remote start signal from a remote start transmitter away from the vehicle:

(A) generating, using a vehicle remote start controller at the vehicle, the parking brake command on the data communications bus to operate the at least one vehicle brake;

(B) generating, using the vehicle remote start controller, the climate control command on the data communications bus to operate the vehicle climate control system; and

(C) starting, using the vehicle remote start controller, the engine.

## CERTIFICATE OF INTEREST

Counsel for Omega Patents, LLC certifies that the following information is accurate and complete to the best of their knowledge:

1.     The full name of every party or amicus curiae represented by counsel:

Omega Patents, LLC.

2.     The name of the real party in interest represented by counsel:

None/Not Applicable.

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by counsel:

None/Not Applicable.

4.     The names of all law firms and the partners or associates that appeared for the party represented by me in the PTAB, or are expected to appear in this Court:

Ryan Santurri, David Carus, and Christopher Regan of Allen Dyer et al.

5.     The cases known to be pending in this Court or other jurisdiction that will directly affect or be directly affected by this Court's decision in this appeal:

*Omega Patents, LLC v. Bayerische Motoren Werke AG, et al.*, No. 1:21-cv-00030 (D. Del).

6.     This appeal is not related to any Organizational Victims or Bankruptcy cases.

October 21, 2022

*/s/ Ryan T. Santurri*

David S. Carus, FL Bar No. 035476
dcarus@allendyer.com
Ryan T. Santurri, FL Bar No. 015698
rsanturri@allendyer.com
ALLEN, DYER, DOPPELT
  + GILCHRIST, PA
255 South Orange Avenue, #1401
Orlando, FL 32801
Telephone:  (407) 841-2330

*Attorneys for Appellant*
*Omega Patents, LLC*

# TABLE OF CONTENTS

**REPRESENTATIVE PATENT CLAIMS AT ISSUE ON APPEAL** ................ i

**CERTIFICATE OF INTEREST** ......................................................... iii

**TABLE OF AUTHORITIES** ............................................................ vii

**STATEMENT OF RELATED CASES** ................................................x

**I.    JURISDICTIONAL STATEMENT** ...............................................1

**II.   INTRODUCTION** ....................................................................1

**III.  STATEMENT OF THE ISSUES** ................................................4

**IV.   STATEMENT OF THE CASE** ..................................................4

   **A.   Proceedings before the PTAB** ...........................................4

      **1.   BMW's Petition and the PTAB's Final Written Decision** ...................4

      **2.   The prior art at issue in this appeal** .........................................6

      **3.   Hassan discloses sensed conditions that override or terminate remote start** ....................................................7

      **4.   Birzl discloses local starting** .................................................10

   **B.   The claims at issue in this appeal** .......................................10

**V.    SUMMARY OF THE ARGUMENT** .............................................11

**VI.   APPLICABLE LEGAL STANDARDS** ..........................................11

   **A.   Standard of Review** ...........................................................11

**VII.  ARGUMENT** ........................................................................13

   **A.   The PTAB erred as a matter of law in determining the combination of Hassan and Birzl rendered obvious Claims 1, 5-11, 14, 18-24, and 28-31 of the '814 Patent** .................................13

      **1.   The PTAB failed to properly consider evidence of how a POSITA would have combined Hassan and Birzl** .....................14

**2.    The PTAB's adoption of safety and convenience as the motivation to combine was legally incorrect and unsupported by the evidence** ..................................................................................18

**3.    The PTAB failed to properly consider evidence that a POSITA would not have combined Hassan and Birzl for safety and convenience** ....................................................................21

**4.    The PTAB erred as a matter of law in combining Baier-Welt, Kim323 and/or Mauti with Hassan and Birzl to render obvious claims 2–4, 12, 13, 15–17, and 25–27** .........................30

**B.    The PTAB abused its discretion by failing to consider material evidence** ........................................................................31

**C.    The Court should reverse the PTAB and hold that all challenged claims are valid** ......................................................34

**IX. CONCLUSION** ................................................................34

**CERTIFICATE OF SERVICE** ...........................................36

**CERTIFICATE OF COMPLIANCE** ..................................36

# TABLE OF AUTHORITIES

## CASES

*Abrutyn v. Giovanniello,*
    15 F.3d 1048 (Fed. Cir. 1994)................................................................31

*ActiveVideo Networks, Inc. v. Verizon Communs., Inc.,*
    694 F.3d 1312 (Fed. Cir. 2012)........................................... 19, 20, 21

*Belden Inc. v. Berk-Tek LLC,*
    805 F.3d 1064 (Fed. Cir. 2015)................................................. 12, 34

*Chemours Company FC, LLC v. Daikin Indus., Ltd.,*
    4 F. 4th 1370 (Fed. Cir. 2021) ...............................................................12

*Clearone, Inc. v. Shure Acquisition Holdings, Inc.,*
    35 F.4th 1345 (Fed. Cir. 2022) .............................................................13

*GE v. Raytheon Techs. Corp.,*
    983 F.3d 1334 (Fed. Cir. 2020)............................................................12

*In re Keller,*
    642 F.2d 413 (CCPA 1981) ......................................................... 15, 22

*In re Lee,*
    277 F.3d 1338 (Fed. Cir. 2002)................................................... 32, 33

*Innogenetics, N.V. v. Abbott Labs.,*
    512 F.3d 1363 (Fed. Cir. 2008)............................................................18

*Jaguar Land Rove N. Am. v. Blitzsafe Texas, LLC,*
    IPR2018-00544, Paper 8 at 18 (PTAB Aug. 10, 2018) .......................21

*KSR Int'l Co. v. Teleflex Inc.,*
    550 U.S. 398 (2007) ..............................................................................13

*Mintz v. Dietz & Watson, Inc.*
    679 F.3d 1372 (Fed. Cir. 2012)................................................... 25, 29

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ...............................................................................32

*Owens Corning v. Fast Felt Corp.*,
    873 F.3d 896 (Fed. Cir. 2017)...........................................................34

*Para-Ordnance Mfg. v. SGS Importers Int'l., Inc.*,
    73 F.3d 1085 (Fed. Cir. 1995)...........................................................13

*Power Integrations, Inc. v. Lee*,
    797 F.3d 1318 (Fed. Cir. 2015)..........................................................12

*Randall Mfg. v. Rea*,
    733 F.3d 1355 (Fed. Cir. 2013)..........................................................12

*Raytheon Tech. Corp. v. GE*,
    993 F.3d 1374......................................................................................34

*Redline Detection, LLC v. Star Envirotech, Inc.*,
    811 F.3d 435 (Fed. Cir. 2015)...........................................................31

*TQ Delta, LLC v. Cisco Sys.*,
    942 F.3d 1352 (Fed. Cir. 2019)..........................................................13

*Ultratec, Inc. v. CaptionCall, LLC*,
    872 F.3d 1267 (Fed. Cir. 2017)..........................................................33

*Univ. of Strathclyde v. Clear-Vu Lighting LLC*,
    17 F.4th 155 (Fed. Cir. 2021) ...........................................................13

*Vidstream LLC v. Twitter, Inc.*,
    981 F.3d 1060 (Fed. Cir. 2022).........................................................12

**STATUTES**

28 U.S.C. § 1295(a)(4)(A) ......................................................................1

35 U.S.C. § 141(c) ....................................................................................1

35 U.S.C. § 142 .........................................................................................1

35 U.S.C. § 318(a) ....................................................................................1

35 U.S.C. § 6 ................................................................................................1

**REGULATIONS**

37 C.F.R. § 42.73 .........................................................................................1

**STATEMENT OF RELATED CASES**

This is an appeal from the Final Written Decision of the Patent Trial and Appeal Board ("PTAB") in *inter partes* review proceedings, case number IPR2021-0018. IPR2021-0018 concerned claims 1-31 of U.S. Patent No. 9,458,814 ("the '814 patent").

The *inter partes* review proceedings are related to a pending (and stayed) district court litigation captioned *Omega Patents, LLC v. Bayerische Motoren Werke AG, et al.*, No. 1:21-cv-00030 (D. Delaware), transferred from No. 1:20-cv-01907-SDG (N.D. Georgia), in which Omega accuses BMW of infringing the '814 patent.

Omega is not aware of any other proceeding that may affect, or be affected by, a decision in this appeal.

## I.    JURISDICTIONAL STATEMENT

The PTAB had jurisdiction under 35 U.S.C. §6.

On May 9, 2022, the PTAB issued a Final Written Decision in IPR2021-0018 under 35 U.S.C. § 318(a) and 37 C.F.R. § 42.73.  Omega timely filed and served its Notice of Appeal from this IPR proceeding on July 11, 2022 under 35 U.S.C. § 142.

This Court has jurisdiction under 28 U.S.C. § 1295(a)(4)(A) and 35 U.S.C. § 141(c).

## II.    INTRODUCTION

Decades ago, Inventor Ken Flick founded Omega Research & Development, a company that manufactured and sold automobile car stereo and alarm systems and components.  Mr. Flick built Omega Research & Development's business in developing and manufacturing products in the car stereo, alarm and remote starting industry. In parallel, he earned over 100 patents relating to automotive technology over the last twenty-five years.  Many of those patents include technology directed to security, convenience and remote starting operations over the data bus within a vehicle.  Mr. Flick assigned his patents to his licensing entity, Omega Patents, the Patent Owner of the '814 patent.

The *'814 Patent* is one of three patent applications filed that are directed to three of four embodiments disclosed in the *'814 patent*.  Mr. Flick obtained three

respective patents: the *'814 Patent*; U.S. Patent No. 9,140,228, and U.S. Patent No 9,416,762.  All three of the patents include the same drawings and detailed description.  All three of the patents enjoy priority to a common provisional application 61/792,895, filed March 15, 2013.

The claims of the *'814 Patent* are directed to the remote start embodiment that also includes the added feature of generating a parking brake command on the vehicle data communications bus responsive to receiving the remote start command.  The Flick '228 patent includes claims with the added feature of generating a disengage transmission command on the data bus responsive to receiving the remote start command.  The Flick '762 patent includes claims with the added feature of generating a move window command on the data bus responsive to receiving the remote start signal.  All three applications were examined and allowed by three different examiners in the USPTO.  Two of the patents were subject to a Third-Party Submission under 37 CFR §1.290 – the present *'814 Patent* and the Flick '762 patent.

The Examiner allowed the claims of the *'814 patent* for the following reasons: "The claims recite generating a parking brake command to **operate** a vehicle parking brake when remotely starting an engine. The prior art teaches merely checking the status of the transmission and/or brake. The prior art fails to teach or render obvious the recitations within the claims of generating a command

2

to **operate** a parking brake during the sequence of remotely starting the engine."
Appx2615; bold emphasis in original.

In the *inter partes* proceedings, the Patent Trial and Appeal Board ("PTAB")
invalidated all challenged claims of the *'814 patent* as being obvious, relying
principally on U.S. Patent No. 7,650,864 to Hassan ("*Hassan*") and U.S. Patent
No. 6,384,490 to Birzl ("*Birzl*").  The PTAB found that the claims were <u>not</u>
<u>unpatentable</u> over the similar combination of U.S. Patent No. 8,096,482 to Dage
("*Dage*") and Korean Patent Application No. 20060072323 to Kim ("*Kim323*").

The PTAB ignores voluminous evidence in the prior art and the extrinsic
record that a person skilled in the art would not have combined *Birzl* with *Hassan*
to arrive at the claimed invention.  The PTAB adopted a selective combination of
remote starting from *Hassan* and application of a brake for a local start from *Birzl*.
Ironically, applying the same analysis to the simple combination of *Dage* and
*Kim323*, the PTAB held the claims <u>not</u> rendered unpatentable since, while the
combination of *Dage* and *Kim323* to arrive at the claimed invention may be
possible, these references fail to disclose both starting and braking in response to
the same start signal.

When the prior art and extrinsic evidence are properly considered, there is
no substantial evidence that the prior art renders the claims obvious.  This Court

3

should vacate the PTAB's decisions and affirm the validity of the challenged

claims of the '*814 patent* at issue in this appeal.

## III.    STATEMENT OF THE ISSUES

(1)    Whether the PTAB erred as a matter of law in determining that U.S.

Patent No. 7,650,864 to Hassan ("*Hassan*") combined with U.S. Patent No.

6,384,490 to Birzl ("*Birzl*") rendered obvious Claims 1, 5-11, 14, 18-24, and 28-31

of the '814 patent, and further determining Claims 2-4, 12, 13, 15-17, and 25-27

were obvious by virtue of *Hassan*, *Birzl* plus additional references.

(2)    Whether the PTAB erred as a matter of law by its adoption of BMW's

arguments and its failure to provide an analysis of Patent Owner's evidence

precludes meaningful review.

## IV.   STATEMENT OF THE CASE

### A.    Proceedings before the PTAB

#### 1.    BMW's Petition and the PTAB's Final Written Decision

After being served with Omega's patent infringement complaint, BMW filed

a Petition for *inter partes* review challenging all asserted claims of the '814 patent.

Petitioner presented two obviousness arguments based principally upon the

combination of U.S. Patent No. 7,650,864 to Hassan ("*Hassan*") and U.S. Patent

No. 6,384,490 to Birzl ("*Birzl*"), and U.S. Patent No.  8,096,482 to Dage ("*Dage*")

4

and Korean Patent Application No. 2006/0072323 to Kim ("*Kim323*").[1]

Specifically, Petitioner challenged the validity of the claims as follows:  Claims 1, 5-11, 14, 18-24, and 28-31 as being rendered obvious under 35 U.S.C. §103 over *Hassan* in combination with *Birzl*; Claims 2–4, 15–17, 25–27 as being rendered obvious under 35 U.S.C. §103 over the combination of *Hassan*, *Birzl*, and U.S. Patent No. U.S. Patent Application Publication No. 2010/0211281 to Baier-Welt ("*Baier-Welt*"), Claim 12 as being rendered obvious under 35 U.S.C. §103 over the combination of *Hassan*, *Birzl*, *Baier-Welt*, and U.S. Patent No. 9,156,437 to Kim ("*Kim437*"); and Claim 13 as being rendered obvious under 35 U.S.C. §103 over the combination of *Hassan*, *Birzl*, *Baier-Welt*, and U.S. Patent No. 9,062,617 to Mauti ("*Mauti*").

Petitioner also presented a similar obviousness argument for Claims 1, 6–10, 12, 14, 19-24, and 29–31 as being rendered obvious under 35 U.S.C. §103 over *Dage* in combination with *Kim323*; Claims 2–4, 15–17, and 25–27 as being rendered obvious under 35 U.S.C. §103 over the combination of *Dage*, *Kim323*, and *Baier-Welt*;  Claims 5, 18, and 28 as being rendered obvious under 35 U.S.C. §103 over the combination of *Dage*, *Kim323*, and U.S. Patent No. 5,791,407 to Hammons ("*Hammons*"); and Claim 13 as being rendered obvious under 35 U.S.C.

---

[1] *Hassan* is found at Appx2891-2902; *Birzl* is at Appx2903-2908; *Dage* is at Appx2909-2920; *Kim323* is at Appx2921-2940.

§103 over the combination of *Dage*, *Kim323*, *Baier-Welt*, and *Mauti*.[2]  Appx2028-29.

In the Final Written Decision, the PTAB agreed with Petitioner and invalidated all the challenged claims on the precise grounds it argued as related to combinations based upon *Hassan* and *Birzl*.  Appx49.  The PTAB found the challenged claims were not unpatentable based on the combinations proposed by Petitioner using *Dage* and *Kim323*.

### 2.    The prior art at issue in this appeal

In this appeal, Omega challenges the PTAB's decisions as follows:

(1)    Claims 1, 5-11, 14, 18-24, and 28-31 of the '814 patent are not rendered obvious by the combination of *Hassan* and *Birzl* because *Hassan* and *Birzl*, when considered as a whole for what they teach to a person with ordinary skill in the art, would not have suggested all the claim elements.

(2)    Claims 1, 5-11, 14, 18-24, and 28-31 of the '814 patent are not rendered obvious by the selective combination of *Hassan* and *Birzl*, because a person of ordinary skill in the art would not have been motivated to make such a selective combination for "improved safety and convenience".

---

[2] *Baier-Welt* is found at Appx2941-2951; *Kim437* is at Appx2952-2961; *Mauti* is at Appx2962-2974; *Hammons* is at Appx2975-2983.

(3)    Claims 2–4, 15–17, 25–27 of the '814 patent are not rendered obvious under 35 U.S.C. §103 over the combination of *Hassan*, *Birzl,* and *Baier-Welt* because *Baier-Welt* adds nothing to the deficiencies of the combination of *Hassan* and *Birzl*.

(4)    Claim 12 of the '814 patent is not rendered obvious under 35 U.S.C. §103 over the combination of *Hassan*, *Birzl*, *Baier-Welt*, and *Kim323* because *Baier-Welt* and *Kim323* add nothing to the deficiencies of the combination of *Hassan* and *Birzl*,

(5)    Claim 13 of the '814 patent is not rendered obvious under 35 U.S.C. §103 over the combination of *Hassan*, *Birzl*, *Baier-Welt*, and *Mauti* because *Baier-Welt* and *Mauti* add nothing to the deficiencies of the combination of *Hassan* and *Birzl*.

### 3.    Hassan discloses sensed conditions that override or terminate remote start

*Hassan* discloses a <u>remote start system</u> whereby operation of the vehicle ignition is performed <u>remotely</u> using an RF signal generated by a key fob, for example.  *Hassan,* 1:36-41, 2:4-19.  *Hassan* discloses other remote functions being performed via the key fob, for example, lock, unlock, trunk, panic, or other remote keyless entry (RKE) feature.  *Id.,* 2:20-65.  In other words, *Hassan* discloses functions whereby the <u>user is physically remote from the vehicle</u>, such as remote door locking and unlocking.  Appx4330, ¶51.

In contrast to the '*814 patent* and any other art considered by the PTAB, *Hassan* is understood by a POSITA to be primarily focused on safety concerns associated with remote starting in an enclosed environment, such as a parking garage. *Hassan*, 1:60-65; Appx4330, ¶51.  *Hassan* discloses a litany of safety related concerns related to possible enclosed-space starting including, "the remote starting system thus may start the vehicle when the vehicle is not parked in an enclosed structure, but may override the start command in situations where the vehicle is parked in an enclosed structure or when the carbon monoxide levels at or near the vehicle exceed a threshold level.  The remote starter system of the present invention thus provides a safe starting system that starts the vehicle, when it is safe to do so, but does not start the vehicle if there are conditions surrounding the vehicle that make it potentially unsafe to start and run the vehicle for an extended period of time." *Hassan*, 9:11-20; Appx4330-31, ¶52.

In furtherance of determining that it is safe or appropriate to start the vehicle, *Hassan* discloses that the "remote starter system may further function to shut down the vehicle engine if no valid entry into the vehicle occurs within a period of time (such as thirty seconds or thereabouts or more or less depending on the particular application of the remote starter system) following the remote "start command." *Hassan*, 3:28-33; Appx4331, ¶54.  Moreover, *Hassan* discloses that the vehicle transmission will not be permitted to be shifted out of "park" when in

8

the "remote start mode" unless the vehicle key has been inserted into the ignition. *Hassan,* 4:2-5; Appx4331, ¶55.

*Hassan* further discloses that the system may detect movement of the vehicle and deactivate or shut down the engine and lock the vehicle ignition in response to the detected movement when the control and vehicle are in the remote start mode. *Hassan*, 4:7-12. A valid remote start signal must be received so that an immobilizer is disarmed to permit the remote start controller to engage. *Hassan*, 4:31-34; Appx4332, ¶56.

After the vehicle is started, it remains in "remote start mode" until the mode is terminated by insertion of the key into the ignition of the vehicle or unlocking the vehicle. *Hassan*, 4:35-40. In the remote start mode, the engine will not start if an occupant is detected or movement of the vehicle is detected. *Hassan*, 5:36-43; Appx4332, ¶57. Indeed, *Hassan* discloses a system whereby a "safe remote starter system" is provided even when "the vehicle may be parked in an area that may be unsafe for continued idling or operation of the vehicle engine." *Hassan.*, 5:57-65, 6:59-7:13. To address this problem further, *Hassan* discloses shutdown of the engine based upon a timer. *Id.*, 6:8-17, 7:11-12; Appx4332, ¶58.

*Hassan* also discloses that overriding a start command may depend on cabin temperature, an external camera indicating an unsafe environment, a radar sensor, or an ultrasonic sensor. *Hassan*, 6:52-58, 7:20-21, 7:55, and 7:67. An oxygen or

CO sensor may also be used to override the start command and/or for safe starting. *Id.*, 9:17. Accordingly, based upon an entirety of the teachings of *Hassan*, a POSITA would understand that *Hassan* addresses the litany of potential problems of when or if "it is safe or appropriate to start the vehicle" (1:61-64), as well as teaching critical sensed conditions to prevent remote starting or shut down the remotely started engine as described above. Appx4330-33, ¶¶50-59.

### 4. Birzl discloses local starting

*Birzl* discloses a brake being operated by external power just before <u>*local starting*</u> of the engine (*i.e.*, imminent starting) for securely blocking the vehicle and to conserve battery power. *Birzl*, 1:43-65, 2:42-60. *Birzl* defines imminent starting as sensed by unlocking of the vehicle, opening of the vehicle door, driver seat occupation, and operation of the ignition lock or ignition start. *Id.*, 1:66-2:15. Thus, *Birzl* discloses that the brake is applied based upon certain critical sensed conditions. Appx4333, ¶60.

### B. The claims at issue in this appeal

In the IPR proceedings, the PTAB invalidated independent Claims 1, 14, and 24, and dependent Claims 2-13, 15-23, and 25-31 of the *'814 patent*. Claim 14 of the *'814 patent* is exemplary of independent Claim 1 in that independent Claim 14 is directed to the vehicle remote start controller of the remote start control system of independent Claim 1. Independent Claim 25 of the *'814 patent* is a method

counterpart to independent Claim 1.  The full text of independent Claims 1, 14, and 25 are stated inside the front cover.

## V.    SUMMARY OF THE ARGUMENT

(1)     The PTAB erred as a matter of law in determining the combination of *Hassan* and *Birzl* renders obvious claims 1-5, 11, 14, 18-24, and 28-31.

(2)     The PTAB erred as a matter of law in determining the combination of *Hassan* and *Birzl* plus *Baier-Welt*, *Kim323* and/or *Mauti* renders obvious claims 2–4, 12, 13, 15–17, and 25–27.

(3)     The PTAB erred as a matter of law by wholly adopting Petitioner's arguments and evidence without consideration of Omega's evidence.

(4)     The PTAB erred as a matter of law by improperly excluding Omega's arguments as being presented for the first time.

## VI.    APPLICABLE LEGAL STANDARDS

### A.    Standard of Review

"Whether a claimed invention would have been obvious is a question of law, based on factual determinations regarding the scope and content of the prior art, differences between the prior art and the claims at issue, the level of ordinary skill in the pertinent art, the motivations to modify or combine prior art, and any objective indicia of non-obviousness." *Belden Inc. v. Berk-Tek LLC,* 805 F.3d

11

1064, 1073 (Fed. Cir. 2015), citing *Randall Mfg. v. Rea*, 733 F.3d 1355, 1362 (Fed. Cir. 2013). These factual determinations include whether a prior art reference teaches away and whether a person skilled in the art would have been motivated to combine prior art references. *GE v. Raytheon Techs. Corp.*, 983 F.3d 1334, 1345 (Fed. Cir. 2020).

As this Court recently emphasized in *Chemours Company FC, LLC v. Daikin Indus., Ltd.*, 4 F. 4th 1370, 1374 (Fed. Cir. 2021), the PTAB, when making factual findings, "must have both an adequate evidentiary basis for its findings and articulate a satisfactory explanation for those findings." The PTAB is to consider the scope of the relevant prior art based on whether it is "'reasonably pertinent to the particular problem with which the inventor was involved.'" *Id*. at 1376 (internal citations omitted). The PTAB's failure to engage in reasoned decision-making or to explain the basis for its decisions violates the Administrative Procedure Act. *Power Integrations, Inc. v. Lee*, 797 F.3d 1318, 1323 (Fed. Cir. 2015).

The PTAB's evidentiary determinations are reviewed for abuse of discretion. *Vidstream LLC v. Twitter, Inc.*, 981 F.3d 1060, 1064 (Fed. Cir. 2022). The PTAB "abuses its discretion if its decision (1) is clearly unreasonable, arbitrary, or fanciful; (2) is based on an erroneous conclusion of law; (3) rests on clearly erroneous fact finding; or (4) involves a record that contains no evidence on

12

which the Board could rationally base its decision." *Clearone, Inc. v. Shure Acquisition Holdings, Inc.,* 35 F.4th 1345, 1351 (Fed. Cir. 2022).

## VII.  ARGUMENT

### A.    The PTAB erred as a matter of law in determining the combination of Hassan and Birzl rendered obvious Claims 1, 5-11, 14, 18-24, and 28-31 of the '814 Patent

The PTAB's determination that Petitioner established a motivation to selectively combine *Hassan* and *Birzl* is not supported by substantial evidence. The finding ignores that the combination leads to something other than the claimed invention and is unworkable hindsight reconstruction using the '814 patent as a guide. *See Univ. of Strathclyde v. Clear-Vu Lighting LLC,* 17 F.4th 155, 165 (Fed. Cir. 2021) (reversing PTAB obviousness determination as based on hindsight); *TQ Delta, LLC v. Cisco Sys.*, 942 F.3d 1352, 1361 (Fed. Cir. 2019) (same); *Para-Ordnance Mfg. v. SGS Importers Int'l., Inc.*, 73 F.3d 1085, 1091 (Fed. Cir. 1995) (reversing district court obviousness determination as improper hindsight); see also *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 421 (2007) ("A factfinder should be aware, of course, of the distortion caused by hindsight bias and must be cautious of arguments reliant upon ex post reasoning."). The PTAB disagreed with the Patent Owner that Petitioner relied on improper hindsight analysis. Appx30.

13

### 1.    The PTAB failed to properly consider evidence of how a POSITA would have combined Hassan and Birzl

The PTAB concluded in the Final Written Decision that all of the claim limitations of the independent claims of the *'814 patent* are disclosed by the combination of *Hassan* and *Birzl* in the manner identified by the Petitioner and that "the combination of *Hassan* and *Birzl* teaches or suggests the limitations regardless of the 'sensed critical conditions.'" Appx28.  The PTAB concluded that "the combination of Hassan's remote starting system to include *Birzl's* teaching of actuating a brake command on ignition is not impacted by Patent Owner's 'sensed critical conditions' argument" because the PTAB agrees that the combination presented by the Petitioner is "a precise combination that would have specifically mitigated the safety risk of [a] rollaway while preserving the convenience of [a] remote start."  Appx28-30.

Absent from the PTAB's analysis is a reasoned statement of why the POSITA would (or would not) combine *Hassan* and *Birzl* in the "precise" fashion proposed by Petitioner and adopted by the PTAB.  The only way the PTAB can adopt such precision is to ignore what each reference teaches in its entirety, instead choosing to focus on a single teaching through the lens of hindsight.  Also, notably absent from the PTAB's decision is any meaningful analysis of, or even acknowledgement of, the evidence submitted by the Patent Owner in the form of expert testimony.  The PTAB failed to properly consider the evidence of the

14

explicit teachings of the *Hassan* and *Birzl* references and of the Patent Owner's expert testimony.

Well-settled law requires the prior art to be considered in its entirety and for what the combined teachings of the prior art would have suggested to a POSITA. *W.L. Gore & Associates, Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1563 (Fed. Cir. 1983); and *In re Keller*, 642 F.2d 413, 425 (CCPA 1981)). By adopting Petitioner's arguments and concluding that Patent Owner's arguments provide no impact, the PTAB disregarded certain unfavorable teachings of *Hassan* and *Birzl* as "irrelevant." Appx26, Appx28-29. And, by disregarding selected portions of the prior art, the PTAB ignores evidence that support why a POSITA would not combine *Hassan* and *Birzl*. The PTAB credits Petitioner's expert but does provide an analysis of Patent Owner's expert testimony – that of Joseph McAlexander.

Mr. McAlexander testified that *Hassan* discloses functions whereby the user is physically remote from the vehicle, such as remote door locking and unlocking. Appx4330, ¶51. *Hassan* discloses a system whereby a "safe remote starter system" is provided when "the vehicle may be parked in an area that may be unsafe for continued idling or operation of the vehicle engine." *Hassan*, 5:57-65, 6:59-7:13. To address this problem further, *Hassan* discloses shutdown based upon a timer. *Id.*, 6:8-17, 7:11-12; 4332, ¶58. As such, a person having ordinary skill in the art would understand that *Hassan* addresses the problem of determining

15

"safety as it related to remote starting in an enclosed environment," as well as when the remotely started engine should be shut down. *Hassan* 5:57-65, 6:59-7:13, 9:11-20; Appx4330-4332, ¶¶52, 58.

Mr. McAlexander further testified that a POSITA would recognize that the sensed critical conditions that apply the brake in *Birzl* and **enable** local starting are the ***same*** sensed critical conditions that <u>override or terminate remote starting</u> in *Hassan*.  Appx4333-34, ¶61.



Thus, the record evidence before the PTAB was that the POSITA would consider the teachings of the **required statuses** of sensed safety conditions for remote starting in *Hassan* and recognize that these are the **opposite of required statuses** of the sensed conditions of *Birzl* for local starting.  Indeed, incorporating the required statuses for the sensed conditions of *Birzl*'s local start system into *Hassan's* remote start system would destroy the operability of the safety features

of *Hassan,* as these sensed conditions would disable remote starting in *Hassan.* Appx4334, ¶62.  This is not safety enhancing, but rather functionality and safety defeating.  *Id.*

Patent Owner's expert testified that a combined teaching of *Hassan* and *Birzl* would teach in series: a remote start signal starting the engine while the user is away from the vehicle (*Hassan*), shutting down the engine based upon the sensed conditions (*Hassan*), and the brake would be applied based upon the sensed conditions (*Birzl*).  Appx4334-35, ¶63.  The parking brake is not applied in response to the remote start signal.  *Id.*

Accordingly, as would be understood by a POSITA, to the extent *Hassan* and *Birzl* could be combined, the combination fails to disclose, in response to the remote start signal, generating the parking brake command on the data communications bus to operate the at least one vehicle brake.  Appx4335, ¶64. For example, *Hassan* uses occupant sensing to avoid a remote engine start with an occupant in the vehicle, while *Birzl* is directed to local starting of the vehicle with the driver within the vehicle.  *Id.*

Nonetheless, the PTAB wholly adopted Petitioner's arguments that the combination of *Hassan* and *Birzl* rendered the claims obvious regardless of these failures, and its accepted combination was not impacted by Patent Owner's argument.  The PTAB's adoption focuses, with blinders, on a single teaching for a

17

single purpose and without regard to the references as a whole.  The PTAB's

adoption fails to address the evidence within the references, as well as the expert

testimony of Mr. McAlexander challenging the combination of *Hassan* and *Birzl*.

In other words, the PTAB's conclusion ignored the fundamental flaws in the

combination and is not supported by substantial evidence.

> ## 2. The PTAB's adoption of safety and convenience as the motivation to combine was legally incorrect and unsupported by the evidence

"A patent composed of several elements is not proved obvious by merely

demonstrating that each of its elements was, independently, known in the prior

art."  *See Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1373-74 (Fed. Cir.

2008).  To tie the disparate elements of *Hassan* and *Birzl* together, the PTAB

credits the testimony of Petitioner's expert as providing the motivation for

selectively combining elements using the generic rationale of increased safety and

convenience. Appx28-29.  Notably absent from the PTAB's analysis is any

explanation of why or how a person having ordinary skill in the art would have

arrived at improved safety and convenience as a proper motivation, and why

improved safety and convenience are not overly broad or overcome by the

inoperable system that results from the proposed combination.

Expert testimony that is "generic and bears no relation to any specific

combination of prior art elements [and] fails to explain why a person of ordinary

skill in the art would have combined elements from specific references in the way the claimed invention does" cannot support an obviousness conclusion. *See ActiveVideo Networks, Inc. v. Verizon Communs., Inc.*, 694 F.3d 1312, 1328 (Fed. Cir. 2012). For example, in *ActiveVideo*, this Court recognized that expert testimony referencing generic motivations to combine such as "because you wanted to build something better. You wanted a system that was more efficient, cheaper, or you wanted a system that had more features…" were insufficient. *See id*. Here the PTAB credited Petitioner's expert with testimony that "rolling away" is a problem and the brake would provide "well-known safety benefits," but there was no cited support for the generic notion of safety beyond the expert's conclusory statements. Nothing in these references from the time supported the hindsight theories of Petitioner's expert—to the contrary, the *Hassan* reference was concerned with safety for starting but did not envision a brake command sent in the context of remote starting. To the extent *Hassan* considered rolling away to be a problem, he solved it by ensuring the vehicle transmission could not be shifted out of park while in remote start mode. *Hassan,* 4:2-5; Appx4331, ¶55. In other words, one of skill in the art at the time did not look to a parking brake signal on the data bus to solve the problem solved by the Patent Owner, as proposed by Petitioner in hindsight.

As it relates to vehicles, improved safety amounts to a generic motivation as it is a desire to make all aspects of a vehicle safe.  Likewise, as it relates to remote start of a vehicle, by definition, remote start is a convenience increaser.  Every invention tangentially related to safety or convenience would be rendered obvious under such generic and conclusory motivations, which have been rejected by this Court.  *See ActiveVideo*, 694 F.3d at 1328. In other words, relying on increased safety and convenience amounts to generically wanting "something better."  Thus, to identify *Hassan's* desire to build a better remote start device, as it relates to safety, and identify *Birzl's* desire to build a better local start device, as it relates to increased convenience, in such a "modular" nature, are insufficient to establish obviousness and are fraught with hindsight bias.  *Id*.

Patent Owner's expert testified that the broad motivation of "improved safety" is improper in this instance of vehicle operation, since such would permit almost any combination of prior art references in hindsight, and as such, a POSITA wishing to somehow globally provide additional safety to *Hassan* would have a myriad of options in ways other than applying a parking brake.  Appx4338-39, ¶74.  The PTAB failed to address this evidence of Patent Owner's expert as it relates to the motivation to selectively combine *Hassan* and *Birzl*.

Combining *Hassan* and *Birzl,* for the generic reasons of increased safety and increased convenience, is unrelated to whether a POSITA would have actually

20

combined the specific prior art elements to arrive at the claimed invention in the *'814 patent*. *See ActiveVideo*, 694 F.3d at 1328; *see also Jaguar Land Rove N. Am. v. Blitzsafe Texas, LLC*, IPR2018-00544, Paper 8 at 18 (PTAB Aug. 10, 2018). Patent Owner presented expert evidence of Mr. McAlexander to support the position that a combination of *Hassan* and *Birzl* for increased safety and increased convenience lacks a mutuality and is thus generic or conclusory.  Appx4338-39, ¶74. The PTAB failed to address or refer in any way to the testimony presented. The failure of the PTAB to consider Mr. McAlexander's expert testimony is error. If this testimony were properly considered, the evidence would support a finding that increased safety and convenience are not a proper motivation to selectively combine *Hassan* and *Birzl*.

> ### 3.     The PTAB failed to properly consider evidence that a POSITA would not have combined Hassan and Birzl for safety and convenience

The PTAB concluded that the combination of *Hassan* and *Birzl* is not impacted by Patent Owner's "sensed critical conditions argument" and credits the testimony of Petitioner's expert that *Hassan* and *Birzl* would have been combined by a person skilled in the art to increase satisfaction or improve safety.  Appx28-29.

The Final Written Decision is replete with statements of the PTAB adopting and agreeing with the Petitioner and Petitioner's expert, while summarily

21

disagreeing with the Patent Owner and without any express reference to Patent Owner's expert, Mr. McAlexander. The PTAB failed to expressly provide reasoning as to why the PTAB agrees with the Petitioner and Petitioner's expert in view of Patent Owner's expert testimony. The PTAB failed to properly consider the explicit evidence both in *Hassan* and *Birzl*, and by way of Patent Owner's expert Declaration, of a teaching away from the combination.

The prior art must be considered in its entirety and for what the combined teachings of the prior art would have suggested to a POSITA. *W.L. Gore & Associates, Inc.,* 721 F.2d at 1540; and *In re Keller*, 642 F.2d at 425. By adopting Petitioner's arguments, the PTAB disregarded certain unfavorable teachings of *Hassan* and *Birzl* as "irrelevant." Appx26, Appx28-29. And, by disregarding selected portions of the prior art, the PTAB ignores the teaching away evidence-- the fact that the adopted PTAB rationale to combine *Birzl* with *Hassan* changes the principles of operation of *Hassan* in favor of the roadmap laid out by Petitioner, which was dysfunctional in light of the teachings within the references themselves. Here also, the PTAB credits Petitioner's expert while ignoring Patent Owner's expert's testimony.

The evidence in the record refutes Petitioner's assertions that, "[w]ithout the brake engaged, the vehicle either could not be remote started safety or could not be remotely started at all, both of which undermine the goal of remote start –

convenience." Appx2342. More particularly, the evidence supports the position that many present-day remote vehicle start systems still do not rely on activation of a parking brake, and instead rely on checking the status of the transmission (such as envisioned by *Hassan*) and/or brake as being sufficient, for example, for preventing rollaway. Appx2295; Appx4337-38, ¶¶70-71; Appx4218-20, 124:11-126:4; Appx4221-23, 127:23-129:3; Appx4230-32, 136:13-138:16. These remote start systems are still convenient while being safe. *Id.*

*Hassan* has its own teachings regarding the prevention of unwanted movement of the vehicle, *i.e.* "rolling away" in the language of *Birzl*. For example, *Hassan* provides these teachings:

> the control may <u>not allow the vehicle to be shifted out of "park"</u> when in the "remote start mode" unless the vehicle key has been inserted into the ignition. Optionally, for example, the control (or other vehicle module or system or accessory) may function to <u>detect movement of the vehicle (such as via an imaging sensor or camera or imaging system of the vehicle or at the remote starter control module) and the remote starter control may deactivate or shut down the engine and lock the vehicle ignition</u> in response to a detection of vehicle movement when the control and vehicle are in the remote start mode.
>
> *Hassan*, 4:2-12 (Emphasis Added); Appx4335-36, ¶66.

23

The vehicle rolling away during remote starting is indeed one of the "improved safety" issues already addressed by *Hassan*. *Hassan*, 4:2-12; Appx4335, ¶65. The evidence supports that the numerous sensed conditions provided above related to whether to permit remote starting or terminate remote starting – also relate to safety. *Hassan's* primary focus is using imagery to determine whether the vehicle is in an enclosed space prior to starting to provide safety against a build-up of carbon monoxide. *Hassan*, 6:1-7; Appx4336, ¶67.

The record evidence supports the position that large numbers of remote vehicle start systems have existed for many years without activation of a parking brake via the vehicle data bus. Appx4336-37, ¶68. Petitioner's expert was unable to identify any number or specific occurrences of vehicle accidents crashes or investigations stemming from a rolling vehicle during a remote start operation. Appx4218-20, 124:11-126:4; Appx4337, ¶69. The evidence supports the position that, contrary to Petitioner's expert's statements, rolling away is not a "natural problem" during a remote engine starting. *Id.* Many present-day vehicle remote start systems still do not rely on activation of a parking brake, and instead rely on checking the status of the transmission and/or brake as being sufficient. Appx4337, ¶70. Petitioner and Petitioner's expert have failed to identify when, or even if, the idea of vehicle rolling during a remote engine start when the transmission is engaged in the park position became a problem that would be

recognized by a POSITA.  Appx4218-20, 124:11-126:4; Appx4221-23, 127:23-129:3; Appx4230-32, 136:13-138:16; Appx4337, ¶71. Certainly it was not a problem recognized at the time of any of the prior art references.

It is the inventor of the *'814 Patent*, Mr. Flick, who identified the problems addressed by applying the brake prior to engine start during a remote start.  *'814 Patent*; Appx4338, ¶72.  More particularly, it was Mr. Flick who recognized a solution to the problem -- a solution involving a marginal increase in cost by use of the vehicle data bus to apply a parking brake, and thereby leading to an easy-to-install aftermarket system.  *Id*.  Often the inventive contribution lies in defining the problem in a new revelatory way.  In other words, when someone is presented with the identical problem and told to make the patented invention, it often becomes virtually certain that the artisan will succeed in making the invention. *Mintz v. Dietz & Watson, Inc.*, 679 F.3d 1372, 1377 (Fed. Cir. 2012).  Such an approach is improper.

Petitioner's expert asserted that operation of the ignition system in *Birzl* "invites remote start."  Appx4189-90, 95:1-96:6; Appx4338, ¶73.  Yet the "connection" between *Birzl* and remote starting is simply starting the engine (locally), hardly an invitation to start the vehicle remotely.  Based on this flawed opinion, its expert asserted that a POSITA would deduce that *Birzl* is a "natural extension" of *Hassan* and asserted that checking the transmission for being in park

is a "secondary thing" with the primary one being that *Hassan* does not brake. Appx4203, 109:12-25; Appx4338, ¶73. There is a simple explanation for this -- because *Hassan* does not "focus" on braking, but on remote start. *Id*.

The "focus" of prior art and whether a combination is a "natural extension" are not sufficient technical reasons a POSITA would combine *Hassan* and *Birzl* in the manner proposed by Petitioner. Appx4338-39, ¶74. A POSITA wishing to somehow globally provide additional safety to *Hassan* would have a myriad of options in ways other than applying a parking brake. *Id.* The broad motivation of "improved safety" is improper in this instance of vehicle operation, since such would permit almost any combination of prior art references in hindsight. *Id.* Moreover, the disparate teachings of *Hassan's* remote start and *Birzl's* local start are detailed above. *Id.*

Petitioner failed to articulate a technical rationale in the prior art for a POSITA to specifically combine *Birzl* with *Hassan* in the manner claimed, and by not doing so, the Petitioner is relying on an improper hindsight reconstruction. Appx4339, ¶75. The PTAB discards the deficiencies of this evidence in favor of wholly adopting BMW's conclusory arguments. Appx30-31. When properly considered, the evidence does not support a finding that *Hassan* and *Birzl* would have been combined for safety.

With respect to user convenience, *Hassan* is directed to *remote starting* of a vehicle. *Hassan* fails to disclose anything related to a vehicle parking brake. *Hassan* discloses its own approaches to safety and convenience. In particular, the cameras to capture images indicative of the vehicle being within an enclosed space is the touted safety feature. *Hassan,* 6:59-7:41. Further, the cameras may be used to detect movement and "the remote starter control may deactivate or shut down the engine and lock the vehicle ignition in response to a detection of vehicle movement when the control and vehicle are in the remote start mode." *Id.,* 4:9-12; Appx4339-40, ¶76. Additionally, the "control may not allow the vehicle to be shifted out of 'park' when in the 'remote start mode' unless the vehicle key has been inserted into the ignition." *Hassan*, 4:2-5. In other words, *Hassan* relies on the transmission being in the Park position during starting to prevent vehicle movement. *Id.,* 4:2-5; Appx4340, ¶77.

The secondary reference to *Birzl* discloses *local starting* of a vehicle with the driver <u>within</u> the vehicle – <u>not remote starting</u> with the driver away from the vehicle. *Birzl* discloses*, "a situation in which the vehicle is not secured by means of a vehicle brake (particularly a parking brake) while the vehicle is switched off, but nevertheless ensuring a secure starting of the vehicle." *Birzl,* 1:44-48. *Birzl* addresses this somewhat unique problem as follows:

It is the essence of the present invention that an imminent

starting of the engine be detected. Then, before the

engine is started, the vehicle brake, which was first

released, is operated by way of external power for secure

blocking of the vehicle. *Id.,* 1:61-65.

Moreover, *Birzl* discloses that: "[t]he imminent starting of the vehicle can

be determined, for example, by way of the unlocking of the vehicle, the opening of

the vehicle door, a driver seat occupation detection and/or an operation of the

ignition lock or the ignition/start determination. In particular, the operation of a

starting or ignition system is closely connected to an imminent engine start." *Id.*,

2:8-14. When the driver is at the vehicle, the engine is started by the driver in the

vehicle. *Id. Birzl* is not concerned with safety of those nearby during a remote

start, nor concerned with any convenience provided *by remote starting*.

Appx4340-41, ¶78.

In *Hassan*, climate control may be performed based upon an engine start.

*Hassan,* 10:4-16. Logically, this provides ample time for the climate within the

vehicle to be adjusted to a desired level ahead of the driver arriving at the vehicle.

Appx4341, ¶79. In *Birzl*, application of the vehicle brake is performed subsequent

to the rotation of the ignition key "into the starting position ("ignition on"

position)." *Birzl,* 3:43-50; Appx4341-42, ¶80. Patent Owner's expert presented

evidence that a POSITA would understand that a driver interested in remote starting of the engine and adjusting the climate within the vehicle ahead of her arrival at the vehicle (as in *Hassan*), would not look to a vehicle brake actuation along with *local* starting of the engine (as in *Birzl*) for some additional "convenience" or to improve "user satisfaction" and that *Birzl* does nothing to address the user conveniences already set forth by *Hassan*. Appx4341-42, ¶80. Evidence presented by Patent Owner supports that a POSITA can only combine *Hassan* and *Birzl* for safety and convenience based upon hindsight by using Patent Owner's patent specification as a roadmap to combine disjointed pieces of the prior art. Appx4342, ¶81.

"When someone is presented with the identical problem and told to make the patented invention, it often becomes virtually certain that the artisan will succeed in making the invention." *Mintz*, at 1377. The evidence establishes that only improper hindsight can be used to reach the patented invention. The PTAB, by wholly adopting Petitioner's arguments and analysis, fails to consider Patent Owner's evidence, and when properly considered does not support a finding that Petitioner's argument was not based upon hindsight.

Petitioner presented arguments that 1) shutting down the engine upon detected movement is insufficient for safety as the vehicle is already moving; 2) the climate control is deactivated when the engine is off; and 3) user convenience

29

of remote start is eliminated since the driver now must locally engage the brake or locally start the engine.  Appx2342-44.

According to the evidence: first, *Hassan* discloses that the engine shutdown happens *immediately* upon detecting movement and the vehicle may be immobilized (*Hassan*, 5:37-46); second, climate control systems may be operational without the engine running (i.e., electrically powered) (*Flick039*, 9:1-16); and third, the user must go to vehicle to drive it, even if a remote start operation is deactivated and an engine restart is required (engine off), or to permit the vehicle from being shifted out of park (engine on)(*Hassan* 4:2-12; Appx4339-40, ¶¶76-77).  Despite the record evidence showing that the engine shutdown happens immediately, such that the vehicle is *not* already rolling, the PTAB wrongly adopted Petitioner's arguments as its own.  The PTAB again failed to consider Patent Owner's evidence.  Properly considering the evidence does not support a finding that a POSITA would have combined *Hassan* and *Birzl* for the reasons set forth by the Petitioner.

> **4.    The PTAB erred as a matter of law in combining Baier-Welt, Kim323 and/or Mauti with Hassan and Birzl to render obvious claims 2–4, 12, 13, 15–17, and 25–27**

As an initial matter, because the PTAB's determination that Petitioner established a motivation to selectively combine *Hassan* and *Birzl* is not supported by substantial evidence, the addition of *Baier-Welt*, *Kim323* and/or *Mauti* does not

30

salvage the PTAB's determination. Indeed, there is nothing in any of these three references (whether viewed individually or in combination) to substantiate the combination of *Hassan* and *Birzl* for the independent claims. As such, these combinations also necessarily fail with respect to the dependent claims cited by the PTAB.

Similarly, none of these tertiary references supply the limitations lacking in the *Hassan* and *Birzl* references. Like *Birzl*, *Baier-Welt* has nothing to do with remote starting. Appx4321-22, ¶33. *Kim437* fails to disclose generating the parking brake command on the vehicle data bus in response to a remote start signal, just like *Hassan* and *Birzl*. Appx4322, ¶34. Similarly, *Mauti* fails to disclose generating the parking brake command on the vehicle data bus in response to a remote start signal. Appx4322-23, ¶35. As such, none of these references add to the deficiencies of *Hassan* and *Birzl*.

## B. The PTAB abused its discretion by failing to consider material evidence

The PTAB abuses its discretion if the decision: (1) is clearly unreasonable, arbitrary, or fanciful; (2) is based on an erroneous conclusion of law; (3) rests on clearly erroneous fact findings; or (4) involves a record that contains no evidence on which the Board could rationally base its decision. *Redline Detection, LLC v. Star Envirotech, Inc.*, 811 F.3d 435, 442 (Fed. Cir. 2015) (quoting *Abrutyn v. Giovanniello*, 15 F.3d 1048, 1050–51 (Fed. Cir. 1994)).

The PTAB must examine the relevant data and articulate a satisfactory explanation for its decision including a rational connection between the facts and choice made. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983). Moreover, "[f]or judicial review to be meaningfully achieved within these strictures, the agency tribunal must present a full and reasoned explanation of its decision." *In re Lee*, 277 F.3d 1338, 1342 (Fed. Cir. 2002).

The PTAB's Final Written Decision credits the testimony of Petitioner's expert, having wholly adopted the testimony of Petitioner's expert as it relates the teachings of *Hassan* and *Birzl* and the motivation to combine *Hassan* with *Birzl*. Appx29-30. The PTAB concluded that "we agree with Petitioner that the proposed combination presents 'a precise combination that would have specifically mitigated the safety risk of [a] rollaway while preserving the convenience of [a] remote start.'" Appx30 (citing Appx3111 ¶ 64; Appx4134-35; 40:12-41:20)."

Patent Owner twice provided rebuttal testimony to Petitioner's expert in the form of Declarations of its own expert Appx3983; Appx4302. The PTAB, in its Final Written Decision, fails to acknowledge or discuss Patent Owner's expert testimony contradicting that of Petitioner's expert. The PTAB fails to provide any reasoned statement as to why it afforded Petitioner's expert all deciding weight while ignoring Patent Owner's expert testimony. Thus, the PTAB made significant evidentiary decisions without providing an explanation or reasoned basis for its

decision. For judicial review to be meaningfully achieved within these strictures, the agency tribunal must present a full and reasoned explanation of its decision." *In re Lee*, 277 F.3d 1338, 1342 (Fed. Cir. 2002). By excluding any discussion of Patent's Owner's expert testimony from the record, the PTAB's decision making is unreviewable. *Ultratec, Inc. v. CaptionCall, LLC*, 872 F.3d 1267, 1275 (Fed. Cir. 2017).

The PTAB also concluded that Patent Owner's arguments with respect to hindsight are improper as being introduced for the first time in the Patent Owner's Sur-Reply based upon the contention that Patent Owner's hindsight analysis was based upon *Kim323*. Appx30. The PTAB mischaracterized Patent Owner's arguments.

Petitioner relied on *Kim323* and a smattering of other prior art to provide a bridge between *Hassan* and *Birzl* – to show they are combinable. Patent Owner's arguments that Petitioner is applying hindsight analysis have always been based upon the combination of *Hassan* and *Birzl*, but Patent Owner applied the same basic argument to also discuss the other references raised by Petitioner. Accordingly, the PTAB mischaracterized Patent Owner's arguments, and disregarded these hindsight arguments based upon its own mischaracterization. By doing so, the PTAB failed to consider Patent Owner's evidence. Thus, meaningful review of these arguments was precluded. *Ultratec*, 872 F.3d at 1275.

33

Had the PTAB properly considered the Patent Owner's arguments along with supporting evidence, the evidence supported a finding that Petitioner's combination of *Hassan* and *Birzl* was based upon hindsight.

### C. The Court should reverse the PTAB and hold that all challenged claims are valid

Reversal is appropriate here because, when the evidence is properly considered, there is not substantial evidence to support the PTAB's obviousness determinations. As the Court held in *Owens Corning*, when "there is only one possible evidence-supported finding . . . when the correct construction is employed," the PTAB's decision is not supported by substantial evidence. *See Ownes Corning v. Fast Felt Corp.*, 873 F.3d 896, at 900-01; *see also Raytheon Tech. Corp. v. GE*, 993 F.3d 1374 (Fed. Cir. 2021); *Belden*, 805 F.3d at 1077.

### IX. CONCLUSION

For these reasons, the Court should reverse the PTAB's determination of unpatentability for all challenged claims.

Respectfully Submitted this October 21, 2022,

>  */s/Ryan T. Santurri*
>  David S. Carus, FL Bar No. 035476
>  dcarus@allendyer.com
>  Ryan T. Santurri, FL Bar No. 015698
>  rsanturri@allendyer.com
>  ALLEN, DYER, DOPPELT
>   + GILCHRIST, PA
>  255 South Orange Avenue, #1401
>  Orlando, FL 32801
>  Telephone:  (407) 841-2330
>
>  *Attorneys for Appellant*
>  *Omega Patents, LLC*

## CERTIFICATE OF SERVICE

On October 21, 2022, the undersigned caused the foregoing document to be filed electronically by using the Court's CM/ECF system. All parties are represented by registered CM/ECF users and will be served by the appellate CM/ECF system.

*/s/ Ryan T. Santurri*

Ryan T. Santurri, FL Bar No. 015698

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Federal Circuit Rule 32(a)(7)(B) because this brief contains 7,719 words, excluding the parts of the brief exempted by Fed.R.App.P. 32(f) and Federal Circuit Rule 32(b)(2),

2.      This brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in Times New Roman 14-point type.

*/s/ Ryan T. Santurri*

Ryan T. Santurri, FL Bar No. 015698

**ADDENDUM**

Trials@uspto.gov                                                   Paper 24
571-272-7822                                               Date: May 9, 2022

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

BMW OF NORTH AMERICA, LLC
Petitioner,

v.

OMEGA PATENTS, LLC
Patent Owner.

_____

IPR2021-00181
Patent 9,458,814 B2

_____

Before KALYAN K. DESHPANDE, AMANDA F. WIEKER, and
AMBER L. HAGY, *Administrative Patent Judges.*

DESHPANDE, *Administrative Patent Judge.*

JUDGMENT
Final Written Decision
Determining All Challenged Claims Unpatentable
*35 U.S.C. § 318(a)*

IPR2021-00181
Patent 9,458,814 B2

# I.    INTRODUCTION

## A.    Background

BMW of North America, LLC ("Petitioner") filed a Petition requesting *inter partes* review of claims 1–31 of U.S. Patent No. 9,458,814 B2 (Ex. 1001, "the '814 patent").  Paper 1 ("Pet.").  Omega Patents, LLC ("Patent Owner") filed a Preliminary Response.  Paper 6 ("Prelim. Resp.").

On May 10, 2021, we instituted *inter partes* review of claims 1–31 of the '814 patent.  Paper 7 ("Dec.").  After institution, Patent Owner filed a Patent Owner's Response.  Paper 11 ("PO Resp.").  In response, Petitioner filed Petitioner's Reply to Patent Owner's Response.  Paper 12 ("Pet. Reply").  Patent Owner filed a Sur-Reply to Petitioner's Reply to Patent Owner's Response.  Paper 15 ("PO Sur-reply").

The parties requested oral argument (Papers 16, 17), which we held by video on March 14, 2022.  Paper 23 ("Tr.").

The Board has jurisdiction under 35 U.S.C. § 6.  In this Final Written Decision, after reviewing all relevant evidence and arguments, we determine Petitioner has met its burden of showing, by a preponderance of the evidence, that claims 1–31 of the '814 patent are unpatentable.

## B.    Related Matters

The parties identify *Omega Patents, LLC v. Bayerische Motoren Werke AG, et al.*, No. 1:20-cv-01907-SDG (N.D. Georgia), which involves the '814 patent, as a related matter.  Pet. 99; Paper 5, 2.

## C.    The '814 Patent

The '814 patent, titled "Remote Start Control System for a Vehicle with a Bus Controllable Brake and Associated Methods," issued October 4, 2016, from an application filed March 13, 2014, and claims benefit of priority under 35 U.S.C. § 119(e) to Application No. 61/792,895 filed on

March 15, 2013. Ex. 1001, codes (54), (45), (22), (60). The '814 patent discloses "a remote start control system for a vehicle that includes a data communications bus extending through the vehicle, an engine, at least one vehicle brake being selectively operable based upon a parking brake command on the data communications bus, and a vehicle climate control system operable based upon a climate control command on the data communications bus." *Id.* at 2:63–3:4. A remote start transmitter generates a start signal. *Id.* at 3:4–6. That signal is received by a receiver of the vehicle's remote start controller. *Id.* at 3:7–11. In response, a processor "generate[s] the parking brake command on the data communications bus to operate [] at least one vehicle brake, generate[s] the climate control command on the data  communications bus to operate the climate control system, and start[s] the engine." *Id.* at 3:13–17.

Figure 1 from the '814 patent is reproduced below:



Figure 1 depicts a block diagram of remote start system 20 for vehicle 35. *Id.* at 4:59–60. Vehicle 35 includes data communications bus 21, which extends throughout the vehicle, engine 24, and transmission 26 associated

IPR2021-00181
Patent 9,458,814 B2

with the engine. *Id.* at 4:60–63.  Starter circuit 22 is coupled to data communications bus 21 and "to the combustion engine for starting the engine, and may include both a starter and a relay or other controller, such as a powertrain controller, for staring the engine." *Id.* at 4:65–5:2. Transmission actuator circuit 28 is coupled to the data communications bus 21 and to transmission 26 for operating the transmission, and may include both a transmission actuator and a relay or other controller, such as a powertrain or transmission controller. *Id.* at 5:3–7.  Vehicle 35 further includes vehicle remote climate control system 30, which is operable based upon a climate control command on data communication bus 21. *Id.* at 5:7–10.  Vehicle remote start controller 40 includes receiver 46, and central processing unit 42 or a processor coupled to bus interface 44, which is coupled to data communication bus 21 for communications. *Id.* at 5:39–46. Receiver 46 receives a remote start signal from remote start transmitter 48, which is configured to transmit the remote start signal and is carried by a user when they are away from vehicle 35. *Id.* at 5:47–50.

### D.   Illustrative Claim

Petitioner challenges the patentability of claims 1–31.  Claims 1, 14, and 24 are independent.  Claim 1 is reproduced below:

> 1. A remote start control system for a vehicle comprising a data communications bus extending through the vehicle, an engine, at least one vehicle brake being selectively operable based upon a parking brake command on the data communications bus, and a vehicle climate control system operable based upon a climate control command on the data communications bus, the remote start control system comprising:
>
> > a remote start transmitter remote from the vehicle and configured to generate a remote start signal; and
> > a vehicle remote start controller at the vehicle and comprising

IPR2021-00181
Patent 9,458,814 B2

> a receiver configured to receive the remote start signal from
> said remote start transmitter, and
> at least one processor cooperating with said receiver and
> configured to, in response to the remote start signal,
> generate the parking brake command on the data
> communications bus to operate the at least one vehicle
> brake,
> generate the climate control command on the data
> communications bus to operate the climate control system,
> and
> start the engine.

Ex. 1001, 10:9–32.

     E.    *Instituted Grounds of Unpatentability and Evidence of Record*

    We instituted the instant trial based on the following grounds of

unpatentability.[1]  Dec. 5–6, 44.

| Claim(s) Challenged | 35 U.S.C. § | References |
|---|---|---|
| 1, 5–11, 14, 18–24, 28–31 | 103 | Hassan[2], Birzl[3] |
| 2–4, 15–17, 25–27 | 103 | Hassan, Birzl, Baier-Welt[4] |
| 12 | 103 | Hassan, Birzl, Baier-Welt, Kim437[5] |
| 13 | 103 | Hassan, Birzl, Baier-Welt, Mauti[6] |

---

[1] Petitioner also relies on the Declaration of Dr. Azim Eskandarian.
Ex. 1003.  Patent Owner relies on the Declaration of Joseph C.
McAlexander, III.  Ex. 2011.
[2] US 7,650,864 B2, issued Jan. 26, 2010 (Ex. 1008, "Hassan").
[3] US 6,384,490 B1, issued May 7, 2002 (Ex. 1009, "Birzl").
[4] US Patent Application Publication No. US 2010/0211281 A1, published
Aug. 19, 2010 (Ex. 1012, "Baier-Welt").
[5] US 9,156,437 B2, issued Oct. 13, 2015 (Ex. 1013, "Kim437").
[6] US 9,062,617 B2, issued Jun. 23, 2015 (Ex. 1014, "Mauti").

IPR2021-00181
Patent 9,458,814 B2

| Claim(s) Challenged | 35 U.S.C. § | References |
|---|---|---|
| 1, 6–10, 12, 14, 19–24, 29–31[7] | 103 | Dage[8], Kim323[9] |
| 2–4, 15–17, 25–27 | 103 | Dage, Kim323, Baier-Welt |
| 5, 18, 28 | 103 | Dage, Kim323, Hammons[10] |
| 13 | 103 | Dage, Kim323, Baier-Welt, Mauti |

The following subsections provide a brief description of the asserted prior art references.

### 1. Hassan

Hassan discloses "a remote starter system for a vehicle that is operable to start the vehicle ignition via a remote transmitter or key fob or the like." Ex. 1008, 1:24–26. Hassan's system includes a remote transmitting device to transmit a start signal, a receiver at the vehicle to receive that signal, and a processor that starts the vehicle's ignition and, optionally, controls the vehicle's climate control or security system. *Id.* at 1:24–41.

---

[7] Despite its inclusion in the heading on page 60 of the Petition, claim 11 is not challenged under any of the grounds that rely on Dage. Tr. 33:11–17; *see also* Pet. 21–22 (identifying grounds and challenged claims, and excluding claim 11), 60–97 (failing to discuss claim 11).
[8] US 8,096,482 B2, issued Jan. 17, 2012 (Ex. 1010, "Dage").
[9] Certified, English-language translation of Korean Patent KR20060072323A, published June, 28, 2006, and accompanied by a declaration of the translator and a copy of the original Korean-language document (Ex. 1011, "Kim323").
[10] US 5,791,407, issued Aug. 11, 1998 (Ex. 1015, "Hammons").

IPR2021-00181
Patent 9,458,814 B2

Figure 2 illustrates a remote starter system for a vehicle and is reproduced below:



**FIG. 2**

Figure 2 shows remote starter control module 14 including receiver 20 and control 18, which is responsive to receiver 20. *Id*. at 2:4–6. Receiver 20 receives a signal, such as a radio frequency signal from remote transmitting unit 12. *Id*. at 2:6–8. Control 18 may be connected to "a power supply or battery 22 of the vehicle and to the vehicle ignition 24 and/or starter relay 25 and/or engine control module 26, so that the control is powered and is operable to control the vehicle ignition and/or engine control module." *Id*. at 2:8–12. Control 18 is preferably connected to, or in communication with, a vehicle communication bus or network. *Id*. at 2:13–14. Control 18 is also operable to communicate with one or more systems of the vehicle such as engine module 26, temperature control system 28, camera 30, or the like. *Id*. at 2:14–19.

IPR2021-00181
Patent 9,458,814 B2

*2. Birzl*

Birzl discloses activating both a vehicle's service brake and parking brake upon imminent start of the vehicle's engine. Ex. 1009, 3:38–48. For example, imminent engine start can be discerned by receipt of a remote operating signal for unlocking or releasing a vehicle door or when it is sensed that an ignition key is rotated into the "ignition on" position. *Id.* Birzl's process requires a vehicle that includes an "engine, vehicle brake, clutch and transmission, as well as various sensors," and "[a] control unit, [which] receives input signals from the sensors and controls the operation of the various vehicle components." *Id.* at 3:30–37. Birzl states that the system provides the benefits of, among other things, ensuring "safety . . . by avoiding faulty operations and [] rolling away of the vehicle when [it] is started." *Id.* at 3:4–6. Figure 2 illustrates the process performed when

8

IPR2021-00181
Patent 9,458,814 B2

starting the engine of the vehicle according to Birzl and is reproduced
below:



**FIG . 2**

Figure 2 explains an embodiment of the process of the invention. *Id*.
at 3:37–38. In step 10, "it is checked whether the ignition key was rotated
into the starting position ('ignition on' position)." *Id*. at 3:44–45. If the
ignition key is rotated into the starting position, a corresponding signal is
transmitted to the control unit, which draws a conclusion about an imminent
start of the engine. *Id*. at 3:43–49. In step 12, the service brake is
automatically activated and the clutch is automatically opened. *Id*. at 3:50–
57. In step 16, the internal-combustion engine is started "which, because of
the preceding measures, cannot result in an immediate movement of the
vehicle." *Id*. at 3:58–60. After step 16, "the service brake is then released in
step 18 if any pedal of the vehicle, such as the accelerator pedal or the brake

IPR2021-00181
Patent 9,458,814 B2

pedal, is operated." *Id* at 3:62–65. The driver signals a ready-to-drive condition by operating these pedals. *Id*. at 3:65–67.

### 3. *Baier-Welt*

Baier-Welt discloses "a method for applying a parking brake of a vehicle depending on the roadway conditions, [in which] at least one electromechanical braking system has a parking brake and an operational brake function." Ex. 1012, Abstract. Specifically, Baier-Welt describes:

> [A] method for applying a parking brake of a vehicle depending on the roadway conditions, in which at least one electromechanical braking system having a parking brake function and a service brake function is provided for braking the wheels of the vehicle, in which a service brake force is generated on each wheel in order to brake the vehicle to a standstill, wherein a parking brake force can be generated on at least two wheels of the vehicle by the at least one electromechanical braking system, may comprise steps of-generating service brake forces in a stationary vehicle on at least two of the wheels, said forces having an amount corresponding to the total of the previous service brake forces applied to all wheels, testing a stopping of the vehicle, and-when the vehicle is maintained in the stop position, the amount of the service brake forces on the at least two wheels is reduced and, simultaneously, parking brake forces corresponding to the reduction in service brake forces are built up at least on the other wheels.

*Id*. ¶ 10.

IPR2021-00181
Patent 9,458,814 B2

Figure 1 illustrates a block diagram of the braking system and is reproduced below:



Figure 1 shows "an electromechanical braking system EMB that is integrated in a vehicle." *Id*. ¶ 22. The vehicle comprises "a left front wheel LVR, a right front wheel RVR, a left rear wheel LHR and a right rear wheel RHR." *Id*. The electromechanical braking system comprises an integrated control system SS, which has a connected control unit CU and memory unit MU, which provide a service brake function and a parking brake function. *Id*. ¶ 23. The electromechanical braking system can also "be formed in this connection by an electromechanical service brake system and an electromechanical parking brake system which each form constructional units that are arranged separately from each other." *Id*. ¶ 24. The electromechanical service brake system comprises "a first to fourth service brake B1–B4 and the electromechanical parking brake system comprises at least first and second electromechanical parking brakes F1, F2, the first and

IPR2021-00181
Patent 9,458,814 B2

second electromechanical parking brakes F1, F2 conventionally being
provided on the rear wheels LHR, RHR of the vehicle." *Id.* ¶ 25. Baier-
Welt states, "[i]n a preferred embodiment the vehicle comprises a
'combined' electromechanical braking system EMB in which a service brake
B1–B4 and a parking brake F1–F4 are provided on both the front wheels
RVR, LVR and rear wheels LHR, RHR respectively." *Id.* ¶ 26.

### 4. *Kim437*

Kim437 discloses a "remote start system for a vehicle which activates
a timer configured after a vehicle is remote started when a door of the
vehicle is opened." Ex. 1013, Abstract. After the timer is activated, "a fob
(e.g., a keyless remote) is searched and certified once a driver's door is
closed, a brake is operated, or a predetermined time has elapsed without any
operation of the vehicle." *Id.* The vehicle is converted from a remote start
mode to a normal mode once the fob is certified. *Id.* If the fob is not

IPR2021-00181
Patent 9,458,814 B2

certified, the remote start is terminated. *Id*. Figure 2 illustrates a block
diagram of a remote starting system for a vehicle and is reproduced below:

FIG. 2



Figure 2 shows a vehicle remote starting system and includes
telematics module 100, body control module 200, signal processing means
300, and timer 500. *Id*. at 3:36–40. The remote start signal is transmitted
from user's terminal 10, such as a mobile phone or a smart phone, to
telematics module 100 via server 20. *Id*. at 3:57–60. Telematics module
100 receives a remote start signal from a vehicle and transmits it to body
control module 200. *Id*. Body control module 200 checks conditions of the
vehicle and transmits the remote start signal to signal processing means 300
when the remote start signal is an appropriate remote start signal for that
specific vehicle. *Id*. at 3:43–47. Body control module 200 also determines
whether the vehicle is in a locked or unlocked state after initiating the
remote start, and generates and transmits warning signals to signal

processing means 300. *Id*. at 4:5–8. "[S]ignal processing means 300 receives the remote start signal and checks the conditions of the vehicle and implements the remote start only when the vehicle conditions are normal." *Id*. at 4:17–20. When the conditions are normal, signal processing means 300 implements the remote start and timer 500 begins counting when a door of the vehicle is opened after initiating start. *Id.* at 4:17–30.

### 5. *Mauti*

Mauti discloses "[a] method of remotely performing a vehicle autostart function when starting a vehicle engine." Ex. 1014, Abstract. Mauti states, "[t]he method may include receiving two or more geo-boundary parameters and a time-session parameter, wherein the parameters are associated with autostarting a vehicle." *Id*. at 1:30–33. The method may also include "determining that the vehicle and a handheld communication device (HCD) associated with the vehicle are within a geographic area defined by the geo-boundary parameters at a time defined by the time-session parameter." *Id*. at 1:33–37.

### 6. *Dage*

Dage discloses a system for controlling a vehicle climate control system in response to starting an engine with a remote start operation. Ex. 1010, Abstract. The system in Dage "includes a first sensor for generating a cabin temperature signal indicative of a temperature within the vehicle" and "a controller for controlling idle speed of the engine in response to the cabin temperature signal such that the controlled idle speed enables the climate control system to achieve a desired temperature." *Id*. at 1:54–60. Figure 1 illustrates a system for controlling climate control in a vehicle and is reproduced below:

IPR2021-00181
Patent 9,458,814 B2



*Fig-1*

Figure 1 show system 10 controlling vehicle climate control with a remote start operation. *Id*. at 2:63–65. System 10 includes RF transmitter 12, remote start controller 14, climate controller 16, power train control module (PCM) 18, and engine 20. *Id*. at 2:66–3:1. Remote start controller 14, climate controller 16, and PCM 18 "may be operatively coupled to each via a data bus." *Id*. at 3:1–3. RF transmitter 12 may be implemented as a key fob and send encrypted RF data to remote start controller 14. *Id*. at 3:7–10. In response to the RF encrypted data, remote start controller 14 may transmit a start engine command over the data bus to PCM 18, so that PCM 18 starts engine 20 of the vehicle via PCM 18, and transmit an engine start message over the data bus to climate controller 16. *Id*. at 3:10–20.

IPR2021-00181
Patent 9,458,814 B2

### 7. *Kim323*

Kim323 teaches "a method of locking and releasing a vehicle parking brake system." Ex. 1011, 4. Specifically, Kim323 discloses "a method of locking and releasing an automotive parking brake that makes it possible, simply by a wireless manipulation, both to lock and release a parking brake and to move a shift lever." *Id*. The parking brakes are referred to as hand brakes or side brakes and are used when the vehicle is parked or stopped, "because when the driver manually manipulates a lever that is installed to the side of the driver, the vehicle is completely fixed in position." *Id*. Kim323 describes that it is necessary to park with the shift lever placed in a neutral position when a vehicle is parallel parking near a designated parking zone and blocking another vehicle due to limited space for parking. *Id*. If the driver forgets to place the lever in the neutral position and parks with the shift lever in the parking position and the parking brake is locked, then the driver of another vehicle seeking to exit the parking space has to go to the automobile to release the parking brake and manipulate the shift lever to the neutral position. *Id*. The method of Kim323 allows a driver to remotely lock and release the parking brake.

### 8. *Hammons*

Hammons discloses a vehicle heating and cooling control system, which automatically starts a vehicle to warm or cool it. Ex. 1015, 1:36–38. The vehicle includes a heating and cooling control system, which "includes a processing unit coupled to the vehicle's ignition system, heating system, and cooling system." *Id*. at 1:39–42. Hammons states, "[t]he processing unit may also cause the windows of the vehicle to be defrosted and cleaned by starting front and rear defrost systems and then activating the front and/or rear windshield wipers to clear the defrosted ice from the windows." *Id*. at

16

IPR2021-00181
Patent 9,458,814 B2

1:46–50. This creates "an automatic and programmable system which starts
and warms or cools a vehicle at a preselected time allowing a vehicle user to
safely and quickly get on the road." *Id*. at 1:50–54. Figure 1 illustrates a
block diagram of a remote and programmable system and is illustrated
below:



Figure 1 shows an embodiment of remotely programmable heating
and cooling system 5, which is based around processing unit 10. *Id*. at 2:23–
26. Processing unit 10 has memory 12 which "stores program code adapted
to provide the functionality which will be discussed herein." *Id*. at 2:28–30.
Processing unit 10 is coupled to receive power from automobile battery 16
and "is programmed to operate either remotely, via receiver unit 14, or
directly through control unit 20." *Id*. at 2:38–41. Receiver unit 14 may be
employed to program system 5 and is a radio-frequency remote coupled to
receive signals from transmitter 90. *Id*. at 2:50–53. Transmitter 90 allows
the vehicle operator to control system 5 from a distance. *Id*. at 2:54–56.
Processing unit 10 is also coupled to receive control signals from outside

17

IPR2021-00181
Patent 9,458,814 B2

temperature sensor 50, inside temperature sensor 52, engine run sensor 54, transmission sensor 42, brake sensor 44, key sensor 46, and water temperature sensor 48. *Id.* at 2:63–3:2. Further, processing unit 10 is coupled to control a number of vehicle devices in a way such that they may be activated when selected by processing unit 10. *Id.* at 3:23–32. Vehicle devices may include ignition switch 60, pre-oiler 62, start with protection unit 64, fan blower control circuit 66, parking light control unit 68, air conditioner control unit 70, front wiper control unit 72, rear wiper control unit 74, defogger circuitry 76, accessory activation circuits 78, engine heat unit 80, windows 82, and doors 84. *Id.* at 3:23–29.

## II.    ANALYSIS

### A.    *Level of Ordinary Skill in the Art*

Petitioner asserts that a person of ordinary skill in the art ("POSITA") of the '814 patent would have either (1) "a Bachelor of Science degree in Electrical Engineering, Mechanical Engineering, or Automotive Engineering, or an equivalent field, with at least two years of academic or industry experience in the automotive industry"; or (2) "a Master of Science degree in Electrical Engineering, Mechanical Engineering, or Automotive Engineering, or an equivalent field, with at least a year of academic or industry experience in the same field." Pet. 20–21 (citing Ex. 1003 ¶¶ 35–38). Petitioner indicates that "[w]ith more education, less experience is needed to attain an ordinary level of skill in the art. Similarly, more experience can substitute for formal education." *Id.* at 21. Patent Owner indicates that, for the purpose of this proceeding, Petitioner's asserted level of skill is sufficient to evaluate the Petition's grounds. PO Resp. 12.

IPR2021-00181
Patent 9,458,814 B2

We also agree with and apply Petitioner's asserted level of skill in the art because it is consistent with the problems addressed in the '814 patent and the prior art.

## B.    Claim Construction

We apply the claim construction standard used to construe the claims in a civil action under 35 U.S.C. § 282(b), as articulated in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc). 37 C.F.R. § 42.100(b) (2019). Under the *Phillips* standard, claim terms must be given "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." 415 F.3d at 1313.

After reviewing the evidence and argument presented by the parties, we determine that it is not necessary to construe any claim terms. *See Nidec Motor Corp. v. Zhongshan Broad Ocean Motor Co.*, 868 F.3d 1013, 1017 (Fed. Cir. 2017) (noting that "we need only construe terms 'that are in controversy, and only to the extent necessary to resolve the controversy'") (quoting *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999)).

## C.    Alleged Obviousness of Claims 1, 5–11, 14, 18–24, 28–31 over Hassan and Birzl

Petitioner contends that claims 1, 5–11, 14, 18–24, and 28–31 of the '814 patent are unpatentable under 35 U.S.C. § 103(a) as obvious over the combination of Hassan and Birzl. Pet. 22–47. For the reasons discussed below, we determine that Petitioner has demonstrated by a preponderance of the evidence that claims 1, 5–11, 14, 18–24, and 28–31 of the '814 patent are unpatentable under 35 U.S.C. § 103(a) as obvious over the combination of Hassan and Birzl.

IPR2021-00181
Patent 9,458,814 B2

> 1. *Claims 1, 14, and 24*
>
>> a) *Petitioner's Arguments*

Independent claims 1, 14, and 24 recite substantially similar limitations and we address them together. Petitioner identifies the preamble as follows:

> A remote start control system for a vehicle comprising a data communications bus extending through the vehicle, an engine, at least one vehicle brake being selectively operable based upon a parking brake command on the data communications bus, and a vehicle climate control system operable based upon a climate control command on the data communications bus, the remote start control system comprising:

Pet. 26; Ex. 1001, 10:9–15. Petitioner contends that the combination of Hassan and Birzl discloses the preamble of independent claim 1. Pet. 26–27. Petitioner argues that Hassan discloses "a transmitter, a remote start controller (comprising a receiver and control), a data communications bus, a climate control system, and an engine." *Id.* at 27 (citing Ex. 1008, 1:24–41, Fig. 2; Ex. 1003 ¶ 93). Petitioner contends that "*Hassan* does not disclose a vehicle brake selectively operable based on a parking brake command, but *Birzl* does." *Id.* at 28 (citing Ex. 1003 ¶ 94). Petitioner argues that Birzl discloses "a vehicle brake that consists of one or more of a service brake and parking brake." *Id.* (citing Ex. 1009, Fig. 1).

Petitioner contends that a person with ordinary skill in the art would have combined Hassan and Birzl in order to "improve user satisfaction and safety." *Id.* at 23 (citing Ex. 1003 ¶¶ 83–84). Petitioner argues that Hassan and Birzl disclose similar systems that involve the "dissemination of signals upon the transmission of an engine start signal." *Id.* (citing Ex. 1003 ¶ 85). Petitioner asserts that a person with ordinary skill in the art "would have understood that vehicle brakes were fundamental, well-known components

IPR2021-00181
Patent 9,458,814 B2

of all motorized vehicles, and had been for decades." *Id.* Petitioner argues that a person with ordinary skill in the art would "expect *Hassan*'s system to be easily implemented in a system with vehicle brakes and to be successful in incorporating *Birzl*'s parking brake command into *Hassan*'s remote start system." *Id.* (citing Ex. 1003 ¶ 86). Thus, Petitioner submits that "activating the parking brake when starting the vehicle would provide the predictable result of improving safety by, for example, 'avoiding faulty operations and a rolling away of the vehicle when [it] is started.'" *Id.* at 23–24 (quoting Ex. 1009, 3:4–6; citing Ex. 1003 ¶ 86).

Independent claim 1 also recites "a remote start transmitter remote from the vehicle and configured to generate a remote start signal." Ex. 1001, 10:17–18. Petitioner argues that Hassan discloses a remote transmitting unit or key fob that includes "a two-way communication device that transmits signals . . . for reception by the receiver 20 of the remote starter control module 14" and further includes "user inputs or buttons 12c . . . to actuate to selectively transmit desired or appropriate command/signal," such as a remote start command. Pet. 29 (quoting Ex. 1008, 2:20–40; citing Ex. 1008, 3:19–22, 3:28–33, Fig. 2; Ex. 1003 ¶¶ 95–96). Independent claim 1 further recites "a vehicle remote start controller at the vehicle." Ex. 1001, 10:19. Petitioner contends that Hassan discloses "both a receiver and a processor (control), which collectively make up the claimed vehicle remote start controller at the vehicle." *Id.* at 30 (citing Ex. 1008, 2:4–19, Fig. 2; Ex. 1003 ¶¶ 97–98).

Independent claim 1 also recites "a receiver configured to receive the remote start signal from said remote start transmitter." Petitioner argues that Hassan discloses a receiver that is "operable to receive signals (such as RF signals via an RF receiver 12b) from a transmitter 21 of the remote starter

21

control." *Id.* at 31 (quoting Ex. 1008, 2:20–27; citing Ex. 1008, 2:4–8, 2:20–40, 3:28–33, Fig. 2; Ex. 1003 ¶¶ 99–100). Independent claim 1 additionally recites "at least one processor cooperating with said receiver and configured to, in response to the remote start signal," generate the parking and climate control commands. Ex. 1001, 10:23–25. Petitioner contends that Hassan discloses "control module 14 includes a receiver 20 and the control 18, which is responsive to receiver 20" to generate commands, and a person with ordinary skill in the art would have understood that "control 18 is cooperating with receiver 20 because it is responsive to the signals received at receiver 20 from the remote transmitter." Pet. 32 (quoting Ex. 1008, 2:4–8; citing Ex. 1008, Fig. 2; Ex. 1003 ¶¶ 101–102).

Independent claim 1 further recites that the processor, in response to the remote start signal, is configured to "generate the parking brake command on the data communications bus to operate the at least one vehicle brake." Ex.1001, 10:26–28. Petitioner contends that Hassan discloses components that are "electrically connected to a vehicle based network or communication bus" that connects the "interfaces between the remote starter control module and other modules and/or sensors of the vehicle." Pet. 33 (quoting Ex. 1008, 13:6–9, 13:62–65; citing Ex. 1008, Fig. 2). Petitioner argues that a person with ordinary skill in the art would understand that the "control generates appropriate signals for the vehicle it is controlling." *Id.* at 34 (citing Ex. 1003 ¶¶ 103–104). Petitioner asserts that "*Hassan* does not disclose a vehicle brake controlled by a parking brake command, but *Birzl* does." *Id.* (citing Ex. 1003 ¶ 105).

Petitioner argues that Birzl discloses that "[w]hen the ignition key is turned to a starting position, 'a corresponding signal is transmitted to the control unit which draws a conclusion about an imminent start of the engine'

IPR2021-00181
Patent 9,458,814 B2

based on the received signal." *Id.* at 34–35 (quoting Ex. 1009, 3:46–49; citing Ex. 1009, 2:29–35). Petitioner contends that Birzl discloses that "[i]f the control unit determines there is an imminent start of the engine, the control unit communicates with the service brake and 'the service brake is automatically activated.'" *Id.* at 35 (citing Ex. 1009, 3:44–51). Petitioner asserts that a person with ordinary skill in the art "would have understood that the control unit generates a parking brake command because it automatically actuates a parking brake in response to a received signal from various vehicle sensors." *Id.* (citing Ex. 1003 ¶ 106). That is, Petitioner contends that a person with ordinary skill in the art would have understood "that the control unit would have processed the signal data to determine if there was an imminent start and generated a parking brake command in response." *Id.* Petitioner argues that a person with ordinary skill in the art would have combined "*Birzl*'s parking brake actuation into the system of *Hassan*" for the reasons discussed above. *Id.* at 36.

Independent claim 1 also recites that the processor, in response to the remote start signal, is configured to "generate the climate control command on the data communications bus to operate the climate control system." Ex.1001, 10:29–31. Petitioner contends that Hassan discloses that the remote start system "may detect an ambient temperature at or in the vehicle and may determine whether or not the cabin temperature is to be increased or decreased." Pet. 37 (quoting Ex. 1008, 10:17–50). Specifically, Petitioner argues that the control "monitor[s] the vehicle temperature (such as engine temperature and/or cabin temperature), and may be responsive to such temperature/temperatures being detected at or above/below threshold temperatures." *Id.* (quoting Ex. 1008, 10:17–50). Petitioner asserts that a person with ordinary skill in the art would have understood that "the control

23

IPR2021-00181
Patent 9,458,814 B2

is generating a climate control command because, in response to a remote start signal, it first determines the cabin temperature, compares it to a threshold setting, and determines whether to heat or cool the vehicle." *Id.* at 37–38 (citing Ex. 1008, 6:42–46, 10:17–50, 10:62–11:7; Ex. 1003 ¶¶ 109–111).

Independent claim 1 also recites that the processor, in response to the remote start signal, is configured to "start the engine." Ex.1001, 10:32. Petitioner contends that Hassan discloses the control unit "is operable in response to the remote transmitting device 12 to activate or energize the ignition or starter relay of a vehicle" and, therefore, to start the engine. Pet. 38 (quoting Ex. 1008, 1:53–60; citing Ex. 1008, 1:24–27; Ex. 1003 ¶¶ 112–113).

      *b)*    *Patent Owner's Arguments[11] and Petitioner's Reply*

Patent Owner argues that claim 1 is patentable over Hassan and Birzl. PO Resp. 12–26. Specifically, Patent Owner argues that (i) the combination of Hassan and Birzl fails to teach or suggest certain elements of claim 1, and (ii) a person with ordinary skill in the art would not have combined Hassan and Birzl. *Id.*

---

[11] Also in connection with Petitioner's obviousness ground based on Hassan and Birzl, Patent Owner presents the argument that Petitioner's combination with Kim323 (Ex. 1011) "can only be based on improper hindsight." PO Resp. 26–32. However, we note that this first ground relies only on the combination of Hassan and Birzl, not Kim323. Accordingly, we understand Patent Owner's hindsight argument to be directed to Petitioner's grounds based on Dage and Kim323, discussed *infra*.

IPR2021-00181
Patent 9,458,814 B2

> (i)  The combination of Hassan and Birzl would not have
> taught or suggested to a person with ordinary skill in the
> art certain elements of claim 1

Patent Owner argues that the combination of Hassan and Birzl fails to teach or suggest certain elements of claim 1.  PO Resp. 14–18.  Specifically, Patent Owner argues that a person with ordinary skill in the art would have understood that the combination of Hassan and Birzl would have resulted in a system where the "parking brake is not applied in response to the remote start signal."  *Id*. at 18 (emphasis omitted).  Patent Owner argues that Hassan discloses certain "sensed critical conditions" that, when met, terminate the "remote start mode."  *Id.* at 15–16.  Such conditions include "insertion of the key into the ignition of the vehicle," "unlocking the vehicle," "detected movement," cabin temperatures, cabin atmosphere conditions, "occupation of the driver seat," or other unsafe conditions.  *Id.* at 12–17.

Patent Owner argues, on the other hand, that Birzl discloses operating a brake before local starting of the engine.  *Id.* at 17.  Patent Owner argues that Birzl describes the same "sensed critical conditions" as Hassan, but discloses the "sensed critical conditions" are required to enable "local starting."  *Id.*  That is, Patent Owner argues that Hassan terminates "remote start mode" when the "sensed critical conditions" are met, whereas Birzl enables "local starting" when the "sensed critical conditions" are met.  Accordingly, Patent Owner argues that a person with ordinary skill in the art would not have concluded that the combination of Hassan and Birzl discloses "*in response to the remote start signal,* generate the parking brake command on the data communications to operate the at least one vehicle brake," as required by claim 1.  *Id.* at 18 (emphasis added).

Petitioner replies that Hassan discloses "remotely starting a vehicle engine in response to receiving a remote start signal" and Birzl discloses "generating a parking brake command in response to a local start signal." Pet. Reply 3 (citing Ex. 1008, 2:20–40, 3:19–33; Ex. 1009, 2:29–35, 3:44–51). Petitioner further responds that a person with ordinary skill in the art would have modified Hassan in order to "secure against rolling away" while providing the features of remote starting and remote climate control. *Id.* (quoting Ex. 1009, 2:1; citing Ex. 1033 ¶¶ 55–57; citing Pet. 22–26). Petitioner further responds that Patent Owner's arguments involving the "sensed critical conditions" are irrelevant because Petitioner's challenge did not rely on Hassan's "sensed critical conditions" and because Birzl's "sensed critical conditions" do not contradict Hassan's remote start. *Id.* at 4–5.

### (ii)   A person with ordinary skill in the art would not have combined Hassan and Birzl

Patent Owner argues that a person with ordinary skill in the art would not have turned to Birzl to "increase user satisfaction or improve safety." PO Resp. 19. Specifically, Patent Owner argues that Hassan already considers "roll away" in safety precautions. *Id.* at 19–20; PO Sur-Reply 4–5. Patent Owner argues that Petitioner's expert failed to identify "any number or specific occurrences of vehicle accidents [sic] crashes or investigations stemming from a rolling vehicle during a remote start operation" and asserts that "rolling away is not a 'natural problem' during remote engine starting." PO Resp. 20–21 (citing Ex. 2013, 124:11–126:4; Ex. 2014 ¶ 69). Patent Owner further argues that Petitioner's proffered "broad motivation of 'improved safety' is improper in this instance of vehicle operation, since such would permit almost any combination of prior

IPR2021-00181
Patent 9,458,814 B2

art references in hindsight." *Id.* at 22; PO Sur-Reply 6–7. Patent Owner
contends that "there are nearly unlimited ways for a POSITA [person of
ordinary skill in the art] to combine *Hassan* and *Birzl* to arguably achieve
'improved user satisfaction and safety.'" PO Resp. 25–26; PO Sur-Reply 2.

Similarly, Patent Owner contends that Petitioner's motivation of
"convenience" is insufficient. PO Resp. 24. Patent Owner specifically
argues that a "POSITA would understand that a driver interested in remote
starting of the engine and adjusting the climate within the vehicle ahead of
her arrival at the vehicle (as in *Hassan*), would not look to a vehicle brake
actuation along with *local* starting of the engine (as in *Birzl*) for some
additional 'convenience' or to improve 'user satisfaction.'" *Id.* at 25 (citing
Ex. 2014 ¶ 80).

Petitioner replies that the Petition states "a precise combination that
would have specifically mitigated the safety risk of [a] rollaway while
preserving the convenience of [a] remote start." Pet. Reply 6 (citing
Ex. 1033 ¶ 64; Ex. 2013, 40:12–41:20). Petitioner argues that Birzl
recognizes that starting the engine only after "[a]ctivation of the vehicle
brake . . . prevents the vehicle from unintentionally beginning to move" and,
thus, "enhances driver safety." *Id.* at 6–7 (citing Ex. 1008, 3:4–6; Pet. 23–
24; Ex. 1033 ¶ 65).

> c)    *Analysis*

As identified above, Petitioner sets forth that all of the limitations of
claim 1 are taught or suggested by the combination of Hassan and Birzl.
*See* § II.C.1.a. Petitioner further articulates reasoning based on rational
underpinning to combine Hassan and Birzl. *Id.* Patent Owner, as identified
in detail above, argues that (i) the combination of Hassan and Birzl would
not have taught or suggested to a person with ordinary skill in the art certain

IPR2021-00181
Patent 9,458,814 B2

elements of claim 1, and (ii) a person with ordinary skill in the art would not have combined Hassan and Birzl. PO Resp. 14–26. We address Patent Owner's arguments in turn.

> (i)  *The combination of Hassan and Birzl would not have taught or suggested to a person with ordinary skill in the art certain elements of claim 1*

As discussed above, Patent Owner argues that a person with ordinary skill in the art would have understood that the combination of Hassan and Birzl would have resulted in a system where the "parking brake is not applied in response to the remote start signal." *See supra* § II.C.1.b.i. We disagree with Patent Owner. Petitioner relies on Hassan as disclosing "remotely starting a vehicle engine in response to receiving a remote start signal" and relies on Birzl as disclosing "generating a parking brake command in response to a local start signal." Pet. 33–35; Pet. Reply 3 (citing Ex. 1008, 2:20–40, 3:19–33; Ex. 1009, 2:29–35, 3:44–51). We find that all of the limitations are disclosed by the combination of Hassan and Birzl in the manner identified by the Petitioner.

We disagree with Patent Owner's argument that the combination of Hassan and Birzl does not meet the limitation "in response to the remote start signal, generating the parking brake command" because Hassan and Birzl have opposite results based on "sensed critical conditions." PO Resp. 12–17. We agree with Petitioner that the combination of Hassan and Birzl teaches or suggests the limitation regardless of the "sensed critical conditions." *See* Pet. Reply 4–5; *see supra* § II.C.1.b.i. That is, the combination of Hassan's remote starting system to include Birzl's teaching of actuating a brake command on ignition is not impacted by Patent Owner's "sensed critical conditions" argument, which goes to whether a person of

IPR2021-00181
Patent 9,458,814 B2

ordinary skill in the art would have combined Hassan and Birzl. That argument is discussed in more detail below. *See infra* § II.C.1.c.ii.

> (ii) *A person with ordinary skill in the art would not have combined Hassan and Birzl*

We disagree with Patent Owner's argument that a person with ordinary skill in the art would not have turned to Birzl to "increase user satisfaction or to improve safety." PO Resp. 19. We credit the testimony of Petitioner's expert, Dr. Azim Eskandarian, who explains that Hassan uses an engine start signal that triggers functionality, such as the activation of the climate control system. Ex. 1003 ¶ 85; Pet. 23. Dr. Eskandarian further explains that "vehicle brakes were fundamental, well-known components of all motorized vehicles" and in Birzl, the "engine start signal triggers the generation of a signal to activate the parking brake." Ex. 1003 ¶ 85; Pet. 23. Dr. Eskandarian also identifies that a person with ordinary skill in the art would have combined Hassan and Birzl to include the well-known safety benefits of brake actuation to a remote start system. Ex. 1003 ¶ 85; Pet. 23.

Similarly, we are not persuaded by Patent Owner's argument that Dr. Eskandarian's lack of knowledge of studies or industry data substantiating that rolling away is a natural problem detracts from his credible testimony of the well-known safety benefits of actuating a parking brake in response to a remote engine start signal. PO Resp. 20–21 (citing Ex. 2013, 124:11–126:4; Ex. 2014 ¶ 69). Dr. Eskandarian also explains that the combination of Hassan and Birzl would have increased the convenience of the combined system by allowing a user to use the "remote" functionality of Hassan. Ex. 1003 ¶ 87; Pet. 24.

We also disagree with Patent Owner that the motivation of "improved safety" is improperly broad, permitting "any combination of prior art

references in hindsight." PO Resp. 22.  Rather, we agree with Petitioner that the proposed combination presents "a precise combination that would have specifically mitigated the safety risk of [a] rollaway while preserving the convenience of [a] remote start."  Pet. Reply 6 (citing Ex. 1033 ¶ 64; Ex. 2013, 40:12–41:20).  Accordingly, we disagree with Patent Owner that Petitioner relied on improper hindsight analysis in presenting its challenge to independent claims 1, 14, and 24.[12]

Patent Owner argues that a person with ordinary skill in the art would not have combined Hassan and Birzl to improve user satisfaction and safety, that Petitioner's rationale for combining was improperly broad, and that the proposed combination relies on improper hindsight.  *See supra* § II.C.3.b.1. We, however, determine that Petitioner's arguments in the Petition and Reply are supported by the cited evidence and are persuasive.  We are persuaded by Petitioner's argument that Hassan's safety features that may reduce risk of rollaway, such as terminating remote start mode if vehicle movement is detected, would have been recognized as insufficient for improving safety from rollaway by a person with ordinary skill in the art because the vehicle could already be in motion.  Pet. Reply 7–9 (citing Ex. 1008, 11:57–62).  Rather, a person with ordinary skill in the art would have turned to Birzl to prevent a vehicle from unintentionally beginning to move.

---

[12] Patent Owner raised the argument that "Petitioner started with the answer and worked backwards in an attempt to assemble the prior art to arrive at the answer" for the first time in its Sur-Reply.  *See* PO Sur-Reply 6–7  Patent Owner generally cites to "[PO] Resp. 26–32" as support, but as noted above, Patent Owner only raises arguments towards the impermissible hindsight analysis based on Kim323 in those cited pages.  Accordingly, we determine that Patent Owner has improperly introduced this argument for the first time on Sur-Reply.

IPR2021-00181
Patent 9,458,814 B2

Pet. Reply 6–7 (citing Birzl 3:4–6). Accordingly, we determine a person with ordinary skill in the art recognizing the problem of rollaway would have been motivated to combine Hassan's remote start features with the automatic brake engagement of Birzl. Additionally, we are not persuaded that Petitioner's argument is based on improper hindsight because we are not persuaded that Petitioner's combination was gleaned only from the '814 patent and addressing the problem of rollaway is well recognized within the prior art, as pointed out by Petitioner. *See id* at 11–13.

> d)    *Conclusion*

We are persuaded by Petitioner's arguments and find they are supported by the cited evidence, and adopt Petitioner's analysis as our own. We find Patent Owner's arguments unavailing for the reasons discussed above. As such, we determine that Petitioner has shown by a preponderance of the evidence that claims 1, 14, and 24 are unpatentable as obvious over the combination of Hassan and Birzl.

> 2.    *Claims 5–11, 18–23, and 28–31*

> a)    *Petitioner's Arguments*

Claim 5 depends from claim 1 and recites "wherein said at least one processor is configured to start the engine after generating the parking brake command and before generating the climate control command." Ex. 1001, 10:48–51. Claims 18 and 28 depend from independent claims 14 and 24 respectively, and recite substantially similar limitations as claim 5. Ex. 1001, 11:59–61, 12:26–59. Petitioner argues that Hassan teaches that "the controller starts the engine before activating the climate control system" and Birzl teaches "generating a parking brake command before starting the engine." Pet. 39–40. Accordingly, Petitioner argues that the combination of Hassan and Birzl teaches this limitation.

31

IPR2021-00181
Patent 9,458,814 B2

Claim 6 depends from claim 1 and recites "wherein the vehicle comprises a vehicle interior temperature sensor; and wherein said at least one processor is configured to generate the climate control command on the data communications bus also based upon the vehicle interior temperature sensor." Ex. 1001, 10:52–60. Claims 19 and 29 depend from independent claims 14 and 24 respectively, and recite substantially similar limitations as claim 6. Ex. 1001, 11:62–67, 12:60–64. Petitioner argues that "Hassan's system detects the 'ambient temperature at or in the vehicle,' via the temperature sensor and determines whether "the cabin temperature is to be increased or decreased." Pet. 41. Petitioner further argues that Hassan "discloses a data communications bus connecting the control and HVAC system", and that "the control heats or cools the vehicle by controlling the HVAC system." *Id.* According to Petitioner, a POSITA "would have understood that the climate control command is based on the temperature sensor reading because that indicates whether the controller issues a command to heat or cool the vehicle." *Id.*

Claim 7 depends from claim 6 and recites "wherein the vehicle interior temperature sensor is coupled to the data bus for communication with said vehicle remote start controller thereover." Ex. 1001, 10:57–60. Claim 20 depends from claim 19 and recites substantially similar limitations to claim 6. Ex. 1001, 12:1–3. Petitioner argues Hassan discloses a "vehicle interior temperature sensor . . . [and a data communications bus," and that "this sensor is connected to the data communication bus to communicate with the controller[.]" Pet. 42.

Claim 8 depends from claim 6 and recites "wherein the climate control system comprises an air conditioning compressor, and wherein said at least one processor is configured to generate the climate control command

IPR2021-00181
Patent 9,458,814 B2

to activate the air conditioning compressor when an interior temperature sensed from the vehicle interior temperature sensor is above a threshold." Ex. 1001, 10:61–67.  Claims 21 and 30 depend from claims 19 and 29 respectively, and recite substantially similar limitations to claim 8. Ex. 1001, 12:4–10, 12:65–67.  Petitioner argues that Hassan discloses an air compressor.  Pet. 43 (citing Ex. 1008 9:32–36).  Petitioner further argues that Hassan's controller "generates a climate control command to activate the HVAC system either to heat or cool the vehicle" based on "the temperature sensed by an interior temperature sensor."  *Id.* at 44. Accordingly, Petitioner argues that a person with ordinary skill in the art would have understood that "Hassan's processor generates a climate control command based on an interior temperature over a threshold . . . which activates the air conditioning compressor."  *Id.*

Claim 9 depends from claim 6 and recites "wherein the climate control system comprises a heater" and "wherein said at least one processor is configured to generate the climate control command to activate the heater when an interior temperature sensed from the vehicle interior temperature sensor is below a threshold."  Ex. 1001, 11:1–8.  Claims 22 and 31 depend from claims 19 and 29 respectively, and recite substantially similar limitations to claim 9.  Ex. 1001, 11:11–12, 13:4–5.  Petitioner argues Hassan discloses a heater.  Pet. 44.  Petitioner further argues a person with ordinary skill in the art would have understood "Hassan's processor generates a climate control command based on an interior temperature below a threshold . . . which activates the heater."  Pet. 45.

Claim 10 depends from claim 1 and recites "wherein the climate control system comprises a ventilation blower" and "wherein said at least one processor is configured to generate the climate control command to

33

IPR2021-00181
Patent 9,458,814 B2

activate the ventilation blower." Ex. 1001, 11:8–12. Claim 23 depends
from claim 19, and recites substantially similar limitations to claim 10.
Ex. 1001, 12:11–12. Petitioner argues a person with ordinary skill in the art
would have understood "the HVAC system of Hassan would include a
ventilation blower in order to adjust fan speed" and "the climate control
command generated by Hassan's processor would activate or adjust the fan."
Pet. 46.

Claim 11 depends from claim 1 and recites "wherein said vehicle
remote start controller comprises a multi-vehicle compatible remote start
controller." Ex. 1001, 11:13–16. Petitioner argues that Hassan's remote
start control unit "may comprise a universal start control unit or module"
and may be implemented as an aftermarket system. Pet. 46–47. Petitioner
further argues, a person with ordinary skill in the art would have understood
Hassan to be compatible with multiple vehicles, "because it recognizes the
type of vehicle and is capable of providing signals appropriate for multiple
vehicle types and manufacturers." *Id.* at 47.

> *b)    Patent Owner's Arguments*

Patent Owner presents the same arguments towards claims 5–11, 18–
23, and 28–31 that it made for claims 1, 14, and 24. *See supra* § II.C.1.b.
We find Patent Owner's arguments unavailing for the same reasons
discussed above. *Id.* Patent Owner does not present any separate arguments
in support of claims 5–11, 18–23, and 28–31.

> *c)    Analysis and Conclusion*

We are persuaded by Petitioner's arguments and find they are
supported by the cited evidence. Accordingly, we adopt Petitioner's
analysis as our own. We determine that Petitioner has shown by a

IPR2021-00181
Patent 9,458,814 B2

preponderance of the evidence that claims 5–11, 18–23, and 28–31 are

unpatentable as obvious over Hassan and Birzl.

> D.    *Alleged Obviousness of Claims 2–4, 15–17, and 25–27 over Hassen,*
> *Birzl, and Baier-Welt*

Petitioner contends that claims 2–4, 15–17, and 25–27 of the '814

patent are unpatentable under 35 U.S.C. § 103(a) as obvious over Hassan,

Birzl, and Baier-Welt.  Pet. 47–54.  We determine that Petitioner has

demonstrated by a preponderance of the evidence that claims 2–4, 15–17,

and 25–27 of the '814 patent are unpatentable under 35 U.S.C. § 103(a) as

obvious over the combination of Hassan, Birzl, and Baier-Welt.

> *1.  Petitioner's Arguments*

Claim 2 depends from independent claim 1, and recites "wherein the

at least one vehicle brake comprises a plurality of vehicle brakes" and

"wherein the at least one processor is configured to generate the parking

brake command to operate the plurality of vehicle brakes."  Ex. 1001,

10:33–37.  Claims 15 and 25 depend from claims 14 and 24 respectively,

and recite substantially similar limitations to claim 2.  Ex. 1001, 11:43–45,

12:41–43.  Petitioner argues that the combination of Hassan and Birzl

"includes a vehicle brake operable based on a parking brake command . . .

[and] *Birzl* discloses service and parking brakes, but does not detail the

architecture of the vehicle brake system."  Pet. 49.  Petitioner argues that

Baier-Welt discloses an electromechanical brake system in a vehicle that

comprises parking brakes on both the front and rear wheels.  *Id.* (citing Ex.

1012 ¶ 26, Fig. 1).  Petitioner asserts that a person with ordinary skill in the

art would have looked to Baier-Welt to incorporate multiple brakes "on

multiple wheels for safety and stability."  *Id.* at 48 (citing Ex. 1003 ¶ 152).

Specifically, Petitioner argues that a person of ordinary skill in the art would

IPR2021-00181
Patent 9,458,814 B2

have understood that "service brakes are actuated to slow a moving vehicle, whereas parking brakes are used to secure a stationary vehicle." *Id.* (citing Ex. 1003 ¶¶ 149–152). Dr. Eskandarian explains that "electromechanical parking brakes are engaged when a vehicle is in a 'static operating state' to prevent the vehicle from moving." *Id.* at 47–48 (citing Ex. 1003 ¶¶ 3, 5); Ex. 1003 ¶ 151. Petitioner argues that a person with ordinary skill in the art would have found it obvious "to incorporate the plurality of brakes of *Baier-Welt* into the *Hassan-Birzl* system to be operated in response to] the parking brake command." *Id.* at 50–51 (citing Ex. 1003 ¶¶ 159–160).

 Claim 3 is dependent on claim 1 and recites "wherein the at least one vehicle brake comprises a pair of front brakes." Ex. 1001, 10:39–40. Claim 3 further recites "wherein the at least one processor is configured to generate the parking brake command to operate the pair of front brakes." *Id.* at 10:40–42. Claims 16 and 26 depend from independent claims 14 and 24 respectively, and recite substantially similar limitations to claim 3. Ex. 1001, 11:48–52, 12:46–50. Petitioner argues that Baier-Welt discloses an electromechanical brake system in a vehicle that comprises parking brakes on both the front and rear wheels. Pet. 50–52. Petitioner argues that a person with ordinary skill in the art would have understood that "operating brakes in pairs on vehicles was a common practice as well for safety and stability . . . [and] operating multiple brakes improves safety by providing redundancy should one brake fail." *Id.* at 53 (citing Ex. 1003 ¶ 166). Accordingly, Petitioner argues that a person with ordinary skill in the art "would have found it obvious to incorporate the front brakes of *Baier-Welt* into the *Hassan-Birzl* system to be operated in response to the parking brake command." *Id.* Petitioner also argues that the combination of Hassan and Birzl "generates a parking brake command to operate a parking brake."

36

IPR2021-00181
Patent 9,458,814 B2

*Id.* at 52.  Petitioner asserts that "[b]ecause the claim does not restrict this element to requiring operating only the front brakes, Baier-Welt's disclosure of four brakes satisfies this element." *Id.*

Claim 4 depends from claim 1 and recites "wherein the at least one vehicle brake comprises a pair of rear brakes." Ex. 1001, 10:43–44.  Claim 4 further recites "and wherein the at least one processor is configured to operate the pair of rear brakes." *Id*. at 10:44–47.  Claims 17 and 27 depend from independent claims 14 and 24, and recite substantially similar limitations.  Ex. 1001, 11:53–55, 12:51–55.  Petitioner argues that Baier-Welt discloses an electromechanical brake system in a vehicle that comprises parking brakes on both the front and rear wheels, and that a person with ordinary skill in the art "would have found it obvious to incorporate the rear brakes of *Baier-Welt* into the *Hassan-Birzl* system." Pet. 53–54.  Petitioner also argues that "the *Hassan-Birzl* combination generates a parking brake command to operate a parking brake." *Id.* at 51– 52.  Petitioner further argues that a person with ordinary skill in the art "would have found it obvious to incorporate the rear brakes of *Baier-Welt* into the *Hassan-Birzl* system to be operated in response to the parking brake command for the same reasons" discussed above with respect to the front brakes recited in claims 3, 16, and 26.

### 2.  *Patent Owner's Arguments and Petitioner's Reply*

Patent Owner argues "a POSITA would not turn to *Baier-Welt* for the purposes of increased safety in the combined *Hassan* system and *Birzl* system" because "*Baier-Welt* addresses safety as it relates to roadway conditions, for example, when the vehicle is in motion to maintain control." PO Resp. 33 (citing Ex. 2014 ¶ 101) (emphasis omitted).  Specifically,

IPR2021-00181
Patent 9,458,814 B2

Patent Owner argues that "if a vehicle is in motion, then *Birzl* has failed to achieve the desired level of safety." *Id.* (citing Ex. 2014 ¶ 101).

Patent Owner further contends that "*Baier-Welt* teaches away from combination with at least *Birzl*." *Id.* According to Patent Owner, "*Birzl* discloses operation of a vehicle brake for securely blocking a vehicle or for securing the vehicle against rolling away before a local starting operation," whereas "*Baier-Welt* discloses the application of a parking brake-based system on roadway conditions." *Id.* Therefore, according to Patent Owner, a person with ordinary skill in the art would "not turn to the selective application of the parking brake based upon roadway conditions in *Baier-Welt* to selectively combine with both securing the vehicle against rolling away before a starting operation, as in *Birzl*, and the remote starting of *Hassan*." *Id.* (emphasis omitted).

Petitioner replies that "the claims merely combine known brake actuation (*Birzl*) with known vehicle brakes (*Baier-Welt*), both performing routine functions." Pet. Reply 14 (citing Ex. 1033 ¶¶ 85–86). Petitioner argues that the claims are not "more than the predictable use of the prior art elements according to their established functions." *Id.* (citing *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 417 (2007)).

    *3. Analysis*

We disagree with Patent Owner that a person with ordinary skill in the art would not have turned to Baier-Welt. As discussed above, Petitioner relies on Hassan as disclosing "remotely starting a vehicle engine in response to receiving a remote start signal" and relies on Birzl as disclosing "generating a parking brake command in response to a local start signal." Pet. 33–35; Pet. Reply 3 (citing Ex. 1008, 2:20–40, 3:19–33; Ex. 1009, 2:29–35, 3:44–51); *see supra* § II.C.1.c.i. As such, the combination of

IPR2021-00181
Patent 9,458,814 B2

Hassan and Birzl is concerned with braking before a remote start in order to increase user safety. *See supra* § II.C.1.c.ii. Baier-Welt discloses an electromechanical brake system in a vehicle that comprises parking brakes on both the front and rear wheels. Ex. 1012 ¶ 26; Pet. 49.

We do not agree with Patent Owner that a person with ordinary skill in the art would not have considered Baier-Welt because Baier-Welt discloses the braking involved with a moving vehicle, whereas Birzl requires that a vehicle is static. PO Resp. 32–33 (citing Ex. 2014 ¶¶ 101–102). Rather, we agree with Petitioner that a person with ordinary skill in the art would have more generally "looked to other parking brake systems, like *Baier-Welt*, to understand how to implement the teachings of *Birzl*, such as using brakes on each wheel of the vehicle." Pet. 48 (citing Ex. 1003 ¶ 153).

We also disagree with Patent Owner that Baier-Welt teaches away from Birzl because "*Birzl* discloses operation of a vehicle brake for securely blocking a vehicle or for securing the vehicle against rolling away before a local starting operation," whereas "*Baier-Welt* discloses the application of a parking brake-based system on roadway conditions." PO Resp. 33. A reference teaches away from the claimed invention if it criticizes, discredits, or would have discouraged a person of ordinary skill in the art from "following the path set out in the reference," or if a person of ordinary skill "would [have been] led in a direction divergent from the path that was taken by the applicant." *In re Gurley*, 27 F.3d 551, 553 (Fed. Cir. 1994); *see In re Fulton*, 391 F.3d 1195, 1201 (Fed. Cir. 2004). Patent Owner has not set forth persuasive evidence that Baier-Welt criticizes, discredits, or would have discouraged a person with ordinary skill in the art from combining the multiple brakes disclosed by Baier-Welt with the braking system of Birzl. As discussed above, we are persuaded by Petitioner that a person with

39

ordinary skill in the art would have generally looked to other braking systems in order to increase user safety.

We find unavailing Patent Owner's argument that claims 2–4, 15–17, and 25–27 are patentable for the reasons summarized above with respect to the combination of Hassan and Birzl as to independent claims 1, 14, and 24. *See supra* § II.C.1.c.ii.

### 4. Conclusion

We are persuaded by Petitioner's arguments and find they are supported by the cited evidence. Accordingly, we adopt Petitioner's analysis as our own. Patent Owner's arguments are unavailing for the reasons discussed above. As such, we determine that Petitioner has shown by a preponderance of the evidence that claims 2–4, 15–17, and 25–27 are unpatentable as obvious over Hassan, Birzl, and Baier-Welt.

### E. Alleged Obviousness of Claim 12 over Hassan, Birzl, and Kim437

Petitioner contends that claim 12 of the '814 patent is unpatentable under 35 U.S.C. § 103(a) as obvious over the combination of Hassan, Birzl, and Kim437. Pet. 55–56. For the reasons discussed below, we determine that Petitioner has demonstrated by a preponderance of the evidence that claim 12 of the '814 patent is unpatentable under 35 U.S.C. § 103(a) as obvious over the combination of Hassan, Birzl, and Kim437.

### 1. Petitioner's Arguments

Claim 12 depends from claim 1 and recites "wherein said remote start transmitter comprises a cellular telephone." Ex. 1001, 11:16–17. Petitioner argues that Kim437 discloses "the remote start signal [is] transmitted from the terminal 10 such as a mobile phone or a smart phone." Pet. 56 (quoting Ex. 1013, 5:11–15). Petitioner contends that a person with ordinary skill in the art would have been motivated to have a user's smart phone as the

IPR2021-00181
Patent 9,458,814 B2

remote transmitter in the *Hassan-Birzl* system in order to "provide added convenience for the user who would not have to carry both a key fob and a phone." *Id.* at 55 (citing Ex. 1003 ¶ 174). Petitioner argues that using a cellular phone as a remote transmitter was well known in the art at the time of the patent. *Id.*

### 2. *Patent Owner's Arguments and Petitioner's Reply*

Patent Owner contends that a person with ordinary skill in the art would not have been motivated by "added convenience for the user" when combining the mobile phone as a remote transmitter of Kim437 with the Hassan/Birzl system because "*Kim437* teaches that, in contrast to Petitioner's expert, the user would still have to carry both the fob and phone." PO Resp. 36 (citing Ex. 2014 ¶ 107).

Petitioner replies that Kim437 discloses that a "user may start the vehicle with only a phone" and subsequently "a user must enter the vehicle with the fob to drive the vehicle." Pet. Reply 16 (citing Ex. 1013, 4:31–33).

### 3. *Analysis*

We agree with Petitioner. We conclude, based on the complete record, that the combination of a cellular telephone, such as a smart phone, as disclosed by Kim437, with the system of Hassan/Birzl, would have yielded predictable results, and we credit the testimony of Dr. Eskandarian that "[u]sing a cellular phone as a remote transmitter was well-known in the art at the time of the patent." Ex. 1003 ¶¶ 174–175. We disagree with Patent Owner that requiring a fob undercuts the convenience of starting a vehicle from a cellular telephone. Pet. Reply 15 (citing Ex. 1033 ¶ 89). As explained by Dr. Eskandarian, there may be many scenarios where remotely starting a vehicle using a mobile phone provides additional convenience, such as in cold weather. Ex. 1033 ¶ 90. We discern this is so even if a user

must have both a fob and the cellular telephone to later drive the vehicle. *Id.* Accordingly, we agree with Petitioner that using a mobile phone as a remote transmitter was well-known in the art at the time of the patent and the combination of such a feature with the Hassan/Birzl system would have yielded predictable results.

We are find unavailing Patent Owner's argument that claim 12 is patentable for the reasons argued above with respect to the combination of Hassan and Birzl as to independent claims 1, 14, and 24. *See supra* § II.C.1.c.ii.

### 4. Conclusion

We are persuaded by Petitioner's arguments and find they are supported by the cited evidence. Accordingly, we adopt Petitioner's analysis as our own. Patent Owner's arguments are unavailing for the reasons discussed above. As such, we determine that Petitioner has shown by a preponderance of the evidence that claim 12 is unpatentable as obvious over Hassan, Birzl, and Kim437.

### F.    Alleged Obviousness of Claim 13 over Hassan, Birzl, and Mauti

Petitioner contends that claim 13 of the '814 patent is unpatentable under 35 U.S.C. § 103(a) as obvious over Hassan, Birzl, and Mauti. Pet. 57–60. For the reasons discussed below, we determine that Petitioner has demonstrated by a preponderance of the evidence that claim 13 of the '814 patent is unpatentable under 35 U.S.C. § 103(a) as obvious over the combination of Hassan, Birzl, and Mauti.

### 1. Petitioner's Arguments

Claim 13 depends from claim 1 and recites "wherein said remote start transmitter comprises a central monitoring station." Ex. 1001, 11:19–21. Petitioner argues that Mauti discloses that a vehicle enters a specific

IPR2021-00181
Patent 9,458,814 B2

geographic area and a call center, or central monitoring station, receives a user's indication for an "autostart event." Pet. 58–59 (citing Ex. 1014, 10:13–41). According to Petitioner, the call center then autostarts the vehicle. *Id.* at 59 (citing Ex. 1014, 10:32–41). Petitioner contends that a person with ordinary skill in the art would have been motivated to "modify the *Hassan-Birzl* system to be capable of receiving remote start commands from multiple sources as disclosed in *Mauti* to improve system versatility." *Id.* at 57 (citing Ex. 1003 ¶¶ 178–179). Petitioner explains that the improved versatility includes offering additional services such as "navigation, telephony, emergency assistance, diagnostics, infotainment, etc." *Id.* (quoting Ex. 1014, 3:23–26). Petitioner asserts that "[s]uch a modification may involve a simple substitution of *Hassan's* receiver for *Mauti*'s more capable telematics unit." *Id.* (citing Ex. 1003 ¶ 180).

   2. *Patent Owner's Arguments and Petitioner's Reply*

Patent Owner argues that Petitioner's rationale of "improv[ing] system versatility" is "not a technical reason to combine references and amounts to nothing more than a hollow conclusion." PO Resp. 37–38. Patent Owner contends a person with ordinary skill in the art would not have turned to Mauti because Mauti's "telematics unit does nothing to address the deficiencies of *Hassan*, in combination with *Birzl*, whereby *Birzl's* operations are not remote." *Id.* (citing Ex. 2014 ¶ 112). Patent Owner presents a similar argument as that presented above in support of independent claims 1, 14, and 24 – i.e., that Birzl has certain "sensed critical conditions" for *local* starting, and "to modify *Hassan* so that remote starting is provided by a call center . . . as in *Mauti*, would effectively make any determination of imminent local starting of the vehicle as taught by *Birzl* meaningless." *Id.* at 38 (citing Ex. 2014 ¶ 113).

IPR2021-00181
Patent 9,458,814 B2

Petitioner replies, as discussed above with respect to independent claims 1, 14, and 24, that Petitioner does not rely on Birzl's "sensed critical conditions," and that it would be a simple substitution of a known technique to incorporate Mauti's central monitoring station into Hassan. Pet. Reply 17.

### 3.   Analysis

We disagree with Patent Owner that a person with ordinary skill in the art would not have been motivated by enhancing the versatility of a system. *See* PO Resp. 37–38. Rather, we agree with Petitioner that a person with ordinary skill in the art would have been motivated to increase the versatility of the system by receiving remote start commands from multiple sources, such as a call center, thereby increasing the convenience of the system. *See* Pet. 57 (citing Ex. 1003 ¶¶ 178–179). We further agree with Petitioner that modifying Hassan's receiver to include Mauti's more capable telematics unit merely involves the simple substitution of known components. *Id.* (citing Ex. 1003 ¶¶ 180–181). Accordingly, we determine that a person with ordinary skill in the art would have found it obvious to combine the telematics unit of Mauti with the Hassan/Birzl system.

### 4.   Conclusion

We are persuaded by Petitioner's arguments and find they are supported by the cited evidence. Accordingly, we adopt Petitioner's analysis as our own. Patent Owner's arguments are unavailing for the reasons discussed above. As such, we determine that Petitioner has shown by a preponderance of the evidence that claim 13 is unpatentable as obvious over Hassan, Birzl, and Mauti.

IPR2021-00181
Patent 9,458,814 B2

G.    *Alleged Obviousness of Claims 1–10 and 12–31 over Dage, Kim323, Baier-Welt, Hammons, and Mauti*[13]

Petitioner contends that claims 1–10 and 12–31 of the '814 patent are unpatentable under 35 U.S.C. § 103(a) as obvious over Dage, Kim323, Baier-Welt, Hammons, and Mauti.  Pet. 60–97.  For the reasons discussed below, we determine that Petitioner has not demonstrated by a preponderance of the evidence that claims 1–10 and 12–31 of the '814 patent are unpatentable under 35 U.S.C. § 103(a) as obvious over the combination of Dage, Kim323, Baier-Welt, Hammons, and Mauti.

Independent claim 1 recites, *inter alia*, that a processor, in response to the remote start signal, is configured to "generate the parking brake command on the data communications bus to operate the at least one vehicle brake."  Petitioner argues that the combination of Dage and Kim323 disclose this limitation.  Pet. 75–78.  Specifically, Petitioner argues that Dage discloses a remote start controller that generates appropriate signals for the vehicle it is controlling and transmits them over the data bus.  *Id.* at 75 (citing Ex. 1010, 3:1–6, 3:11–20; Ex. 1003 ¶¶ 217–218).  Petitioner asserts that "*Dage* does not disclose a vehicle brake controlled by a parking brake command on the communication bus, but *Kim323* renders this limitation obvious."  *Id.* at 76 (citing Ex. 1003 ¶ 219).  Petitioner contends that Kim323 discloses a controller that receives a wireless signal and "outputs a control signal for driving the parking brake locking/releasing actuator so as to lock the parking brake."  *Id.* at 76–77 (quoting Ex. 1010, 6–7; citing Ex. 1003 ¶ 220).  Petitioner argues that "*Kim323* discloses receiving a

---

[13] As noted above, claim 11 is not challenged under any of the grounds that rely on Dage.  Tr. 33:10–16.

IPR2021-00181
Patent 9,458,814 B2

'manipulation signal' and transmitting a 'control signal.'" *Id.* at 77 (citing Ex. 1010, 12).

Patent Owner, in its Preliminary Response, argues that the "operation of the brake via the remote transmitter is unrelated to remote starting." Prelim. Resp. 38 (citing Ex. 2011 ¶ 115). In our Decision instituting *inter partes* review, we agreed with Patent Owner. Dec. 42–43. We determined that independent claim 1 requires that generation of the parking brake command is *in response to the remote start signal*. *Id.* We found that Kim323 discloses that as driver presses "the brake release button (15) of a wireless operations means" (Ex. 1010, 11), the parking brake command is then generated in response to the pressing of the brake release button. *Id*. Patent Owner maintains this argument in its Patent Owner Response. PO Resp. 39–41.

Petitioner, in its Reply, argues that the combination of Dage and Kim323 is similar to the combination of Hassan and Birzl. Pet. Reply 20; *see supra* § II.C. Petitioner argues that "*Dage* teaches starting a vehicle engine *in response to receiving a remote start signal*." *Id.* (citing Ex. 1010, 3:7–10, 2:66–3:3) (underlining omitted) (emphasis added). Petitioner also argues that "*Kim323* teaches generating a parking brake command *in response to a remote parking brake signal*." *Id.* (citing Ex. 1011, 6–7) (underlining omitted) (emphasis added). Petitioner explains that "[y]ou have to have both pieces that come together, the remote start signal of Dage, and the parking brake actuation in response to a remote signal of Kim323." Tr. 15:18–20. Patent Owner responds that the adoption of "Petitioner's rationale would require a POSA to mix and match signals from mutually exclusive prior art – that is, apply the remote braking signal in response to a remote braking command as in *Kim323* to also occur during a remote start in

46

IPR2021-00181
Patent 9,458,814 B2

response to a remote signal as in *Dage*." PO Sur-Reply 7 (citing PO Resp. 39).

We agree with Patent Owner that the combination of Dage and Kim323 fails to teach or suggest that the generation of the parking brake command is *in response to the remote start signal*. Dage discloses a system for controlling vehicle climate control with a remote start operation. Ex. 1010, 2:63–65; *see* Pet. 75. The system includes, among other things, a remote start controller, a climate controller, and a power-train control module, which are operatively coupled to each other via a data bus. Ex. 1010, 2:66–3:3; *see* Pet. 75. Kim323 teaches "a method of locking and releasing an automotive parking brake system." Ex. 1011, 8; *see* Pet. 76. Kim323 describes a "wireless manipulation means" and "a controller that outputs a control signal for controlling" the brake pedal, a parking brake locking/releasing actuator and a shift lever actuator. Ex. 1011, 6. Kim323 specifically discloses that "if the controller receives from the wireless manipulation means a manipulation signal for locking the parking brake, then it outputs a control signal for driving the parking brake locking/releasing actuator so as to lock the parking brake." *Id.* at 7. That is, Kim323 discloses generating a parking brake command in response to a signal for locking the parking brake.

Our findings are consistent with Petitioner's positions – Dage discloses a remote start controller coupled to a data bus and Kim323 discloses a controller for generating a parking brake command. Pet. 75–78; Tr. 14:3–15:23, 23:19–25:21. Petitioner's combination is predicated on a determination that a person with ordinary skill in the art "would have found it obvious to generate *Kim323*'s parking brake command within *Dage*'s

47

IPR2021-00181
Patent 9,458,814 B2

controller, and transmit it over *Dage*'s data communications bus in response to a wireless remote start signal." Pet. 78 (citing Ex. 1003 ¶ 221).

We, however, disagree with Petitioner that the combination of Dage and Kim323 discloses the generation of the parking brake command is *in response to the remote start signal*. That is, the combination of Dage and Kim323 fails to teach that when a remote start signal is received, a signal is sent to a brake controller, as disclosed by Kim323, to generate a brake command. While it may be possible to combine several different controllers on a data bus, there is no disclosure in the prior art that a start controller and brake controller will perform their respective functions in response to the same start signal. Dr. Eskandarian explains that "[a]t the very least, it would have been obvious to a person of ordinary skill in the art to generate a new control signal in response to a received wireless signal," but fails to provide any further rationale or evidence that specifically a parking brake command signal is generated in response to a received remote start signal, as is required by independent claim 1. Ex. 1003 ¶ 221.

Independent claims 14 and 24 recite similar limitations as independent claim 1. Dependent claims 2–10, 12, 13, 15–23, and 25–31 incorporate this limitation by reference. Accordingly, we agree with Patent Owner that Petitioner has not demonstrated by a preponderance of the evidence that claims 1–10 and 12–31 are unpatentable under 35 U.S.C. § 103(a) as obvious over Dage, Kim323, Baier-Welt, Hammons, and Mauti.

### III.    CONCLUSION

Based on the information presented, we conclude that Petitioner has shown, by a preponderance of the evidence, that claims 1–31 of the '814 patent are unpatentable.

IPR2021-00181
Patent 9,458,814 B2

In summary:

| Claims | 35 U.S.C. § | Reference(s)/Basis | Claims Shown Unpatentable | Claims Not shown Unpatentable |
|---|---|---|---|---|
| 1, 5–11, 14, 18–24, 28–31 | 103 | Hassan, Birzl | 1, 5–11, 14, 18–24, 28–31 | |
| 2–4, 15–17, 25–27 | 103 | Hassan, Birzl, Baier-Welt | 2–4, 15–17, 25–27 | |
| 12 | 103 | Hassan, Birzl, Baier-Welt, Kim437 | 12 | |
| 13 | 103 | Hassan, Birzl, Baier-Welt, Mauti | 13 | |
| 1, 6–10, 12, 14, 19–24, 29–31 | 103 | Dage, Kim323 | | 1, 6–10, 12, 14, 19–24, 29–31 |
| 2–4, 15–17, 25–27 | 103 | Dage, Kim323, Baier-Welt | | 2–4, 15–17, 25–27 |
| 5, 18, 28 | 103 | Dage, Kim323, Hammons | | 5, 18, 28 |
| 13 | 103 | Dage, Kim323, Baier-Welt, Mauti | | 13 |
| **Overall Outcome** | | | 1–31 | |

IV.   ORDER

After due consideration of the record before us, and for the foregoing reasons, it is:

ORDERED that claims 1–31 of the '814 patent are held unpatentable;

FURTHER ORDERED that because this is a final written decision, parties to the proceeding seeking judicial review of the decision must comply with the notice and service requirements of 37 C.F.R. § 90.2.

IPR2021-00181
Patent 9,458,814 B2

FOR PETITIONER:

Lionel M. Lavenue
Kara A. Specht
Brooke M. Wilner
Kai Rajan
FINNEGAN, HENDERSON, FARABOW, GARRET & DUNNER LLP
lionel.lavenue@finnegan.com
kara.specht@finnegan.com
brooke.wilner@finnegan.com
kai.rajan@finnegan.com


FOR PATENT OWNER:

Ryan T. Santurri
Christopher F. Regan
David S. Carus
ALLEN, DYER, DOPPELT + GILCHRIST P.A
rsanturri@allendyer.com
cregan@allendyer.com
dcarus@allendyer.com



US009458814B2

(12) **United States Patent**
Flick

(10) **Patent No.:** **US 9,458,814 B2**
(45) **Date of Patent:** **Oct. 4, 2016**

(54) **REMOTE START CONTROL SYSTEM FOR A VEHICLE WITH A BUS CONTROLLABLE BRAKE AND ASSOCIATED METHODS**

(71) Applicant: **Omega Patents, L.L.C.**, Douglasville, GA (US)

(72) Inventor: **Kenneth E. Flick**, Douglasville, GA (US)

(73) Assignee: **OMEGA PATENTS, L.L.C.**, Douglasville, GA (US)

(*) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 420 days.

(21) Appl. No.: **14/208,267**

(22) Filed: **Mar. 13, 2014**

(65) **Prior Publication Data**

US 2014/0278025 A1      Sep. 18, 2014

**Related U.S. Application Data**

(60) Provisional application No. 61/792,895, filed on Mar. 15, 2013.

(51) **Int. Cl.**
*B60R 25/10* (2013.01)
*F02N 11/08* (2006.01)
(Continued)

(52) **U.S. Cl.**
CPC .......... *F02N 11/087* (2013.01); *B60H 1/00657* (2013.01); *B60H 1/00964* (2013.01); *B60R 25/08* (2013.01); *B60R 25/209* (2013.01); *B60W 10/02* (2013.01); *B60W 10/06* (2013.01); *B60W 10/10* (2013.01); *B60W 10/182* (2013.01); *B60W 10/184* (2013.01); *B60W 10/30* (2013.01); *B60W 30/18054* (2013.01); *F02N 11/08* (2013.01);
(Continued)

(58) **Field of Classification Search**
CPC .... B60R 25/04; B60R 25/34; G07C 9/00309
USPC .............. 340/426.13, 426.16, 426.17, 426.2, 340/426.32, 426.34, 449, 457.3; 701/113, 701/115
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| 4,055,772 A | * | 10/1977 | Leung | ................... | G08C 19/34 307/10.1 |
| 4,383,242 A | * | 5/1983 | Sassover | ............ | B60R 25/1001 180/287 |

(Continued)

OTHER PUBLICATIONS

"The Thick and Thin of Car Cabling" by Thompson appearing in the IEEE Spectrum, Feb. 1996, pp. 42-45.

(Continued)

*Primary Examiner* — Thomas Moulis
(74) *Attorney, Agent, or Firm* — Allen, Dyer, Doppelt, Milbrath & Gilchrist, P.A.

(57) **ABSTRACT**

A remote start control system is for a vehicle including a data communications bus extending through the vehicle, an engine, at least one vehicle brake being selectively operable based upon a parking brake command on the data communications bus, and a vehicle climate control system operable based upon a climate control command on data communications bus. The remote start control system may include a remote start transmitter to generate a remote start signal, and a vehicle remote start controller at the vehicle that may include a receiver to receive the remote start signal, and at least one processor cooperating with the receiver. The at least one processor, in response to the remote start signal, may generate the parking brake command on the data communications bus, generate the climate control command on the data communications bus, and start the engine.

**31 Claims, 8 Drawing Sheets**



**US 9,458,814 B2**

Page 2

(51) **Int. Cl.**

| | | |
|---|---|---|
| *B60W 10/02* | (2006.01) | |
| *B60W 10/30* | (2006.01) | |
| *B60W 10/06* | (2006.01) | |
| *B60R 25/20* | (2013.01) | |
| *B60R 25/08* | (2006.01) | |
| *B60W 10/10* | (2012.01) | |
| *B60W 10/18* | (2012.01) | |
| *B60W 10/184* | (2012.01) | |
| *B60W 30/18* | (2012.01) | |
| *F16H 61/00* | (2006.01) | |
| *B60H 1/00* | (2006.01) | |
| *F02N 11/10* | (2006.01) | |
| *B60W 50/00* | (2006.01) | |

(52) **U.S. Cl.**

CPC ........... *F02N 11/0807* (2013.01); *F16H 61/00* (2013.01); *B60R 25/083* (2013.01); *B60R 25/086* (2013.01); *B60W 2050/0045* (2013.01); *B60W 2710/1005* (2013.01); *B60Y 2400/76* (2013.01); *F02N 11/103* (2013.01); *F02N 2200/0804* (2013.01)

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| 4,538,262 A | * | 8/1985 | Sinniger | ................. | H04L 12/40 |
| | | | | | 307/10.1 |
| 4,697,092 A | * | 9/1987 | Roggendorf | ......... | B60R 16/027 |
| | | | | | 200/61.54 |
| 4,760,275 A | * | 7/1988 | Sato | ................... | B60G 17/0195 |
| | | | | | 307/10.1 |
| 4,792,783 A | * | 12/1988 | Burgess | ............ | B60K 35/00 |
| | | | | | 307/10.1 |
| 5,146,215 A | * | 9/1992 | Drori | ............... | B60R 25/1004 |
| | | | | | 340/426.14 |
| 5,252,966 A | * | 10/1993 | Lambropoulos | ... | G07C 9/00182 |
| | | | | | 340/5.64 |
| 5,612,578 A | * | 3/1997 | Drew | ................... | B60R 25/04 |
| | | | | | 123/179.2 |

| | | | | | |
|---|---|---|---|---|---|
| 6,346,876 B1 | * | 2/2002 | Flick | ...................... | B60R 16/03 |
| | | | | | 180/287 |
| 6,529,124 B2 | * | 3/2003 | Flick | ...................... | B60R 16/03 |
| | | | | | 180/287 |
| 6,756,885 B1 | * | 6/2004 | Flick | ...................... | B60R 25/04 |
| | | | | | 180/287 |
| 6,756,886 B2 | * | 6/2004 | Flick | ...................... | B60R 16/03 |
| | | | | | 307/10.6 |
| 6,812,829 B1 | † | 11/2004 | Flick | | |
| 7,010,402 B2 | * | 3/2006 | Flick | ...................... | B60R 25/00 |
| | | | | | 307/10.1 |
| 7,031,826 B2 | † | 4/2006 | Flick | | |
| 7,046,126 B2 | * | 5/2006 | Flick | ...................... | B60R 16/03 |
| | | | | | 307/10.1 |
| 7,068,153 B2 | | 6/2006 | Flick | | |
| 7,091,822 B2 | * | 8/2006 | Flick | ...................... | G08C 17/02 |
| | | | | | 340/5.2 |
| 7,205,679 B2 | * | 4/2007 | Flick | ...................... | B60R 16/03 |
| | | | | | 307/10.3 |
| 7,224,083 B2 | | 5/2007 | Flick | | |
| 7,369,936 B2 | | 5/2008 | Flick | | |
| 7,378,945 B2 | | 5/2008 | Flick | | |
| 8,061,626 B2 | * | 11/2011 | Flick | ................ | B60H 1/00392 |
| | | | | | 165/42 |
| 8,313,039 B2 | † | 11/2012 | Flick | | |
| 9,140,228 B2 | | 9/2015 | Flick | | |
| 2011/0068895 A1 | * | 3/2011 | Gee | ...................... | B60R 25/00 |
| | | | | | 340/5.67 |
| 2014/0278024 A1 | | 9/2014 | Flick | | |
| 2015/0267801 A1 | * | 9/2015 | Bidner | ............. | F16H 57/0417 |
| | | | | | 701/2 |

OTHER PUBLICATIONS

"Surface Vehicle Standard, Class B Data Communications Network Interface", SAE J1850, Jul. 1995, 52 pgs.
"Surface Vehicle Information Report, Chrysler Sensor and Control (CSC) Bus Multiplexing Network for Class 'A' Applications", SAE J2058, Jul. 1990, 26 pgs.

\* cited by examiner
† cited by third party

Case: 22-2012    Document: 9    Page: 101    Filed: 10/21/2022



FIG. 1



112

114

START

116

GENERATING THE DISENGAGE TRANSMISSION POSITION COMMAND ON THE DATA COMMUNICATIONS BUS TO SELECT THE DISENGAGED POSITION (e.g. PARK, NEUTRAL) FOR THE TRANSMISSION, USING THE VEHICLE REMOTE START CONTROLLER AND IN RESPONSE TO THE REMOTE START SIGNAL RECEIVED BY THE RECEIVER

118

STARTING THE ENGINE USING THE VEHICLE REMOTE START CONTROLLER AND IN RESPONSE TO A REMOTE START SIGNAL RECEIVED BY THE RECEIVER

120

GENERATING THE CLIMATE CONTROL COMMAND ON THE DATA COMMUNICATIONS BUS TO OPERATE THE VEHICLE CLIMATE CONTROL SYSTEM, USING THE VEHICLE REMOTE START CONTROLLER AND IN RESPONSE TO THE REMOTE START SIGNAL RECEIVED BY THE RECEIVER (e.g., ALSO BASED UPON THE VEHICLE INTERIOR TEMPERATURE SENSOR, AND/OR THRESHOLD)

END

122

*FIG. 2*

Case: 22-2012    Document: 9    Page: 103    Filed: 10/21/2022



*FIG. 3*

Case: 22-2012     Document: 9     Page: 104     Filed: 10/21/2022



**FIG. 5**

START — 144

142

GENERATING THE MOVE WINDOW COMMAND ON THE DATA COMMUNICATIONS BUS TO CAUSE THE WINDOW MOTOR TO MOVE THE VEHICLE WINDOW, USING THE VEHICLE REMOTE START CONTROLLER AND IN RESPONSE TO A REMOTE START SIGNAL RECEIVED BY THE RECEIVER — 146

STARTING THE ENGINE USING THE VEHICLE REMOTE START CONTROLLER AND IN RESPONSE TO A REMOTE START SIGNAL RECEIVED BY THE RECEIVER — 148

GENERATING THE CLIMATE CONTROL COMMAND ON THE DATA COMMUNICATIONS BUS TO OPERATE THE VEHICLE CLIMATE CONTROL SYSTEM, USING THE VEHICLE REMOTE START CONTROLLER AND IN RESPONSE TO THE REMOTE START SIGNAL RECEIVED BY THE RECEIVER (e.g., ALSO BASED UPON THE VEHICLE INTERIOR TEMPERATURE SENSOR, AND/OR THRESHOLD — 150

END — 152

**FIG. 4**

START — 132

130

STARTING THE ENGINE USING THE VEHICLE REMOTE START CONTROLLER AND IN RESPONSE TO A REMOTE START SIGNAL RECEIVED BY THE RECEIVER — 134

GENERATING THE MOVE WINDOW COMMAND ON THE DATA COMMUNICATIONS BUS TO CAUSE THE WINDOW MOTOR TO MOVE THE VEHICLE WINDOW (i.e. OPEN, CLOSE), USING THE VEHICLE REMOTE START CONTROLLER AND IN RESPONSE TO THE REMOTE START SIGNAL RECEIVED BY THE RECEIVER — 136

GENERATING THE CLIMATE CONTROL COMMAND ON THE DATA COMMUNICATIONS BUS TO OPERATE THE VEHICLE CLIMATE CONTROL SYSTEM, USING THE VEHICLE REMOTE START CONTROLLER AND IN RESPONSE TO THE REMOTE START SIGNAL RECEIVED BY THE RECEIVER (e.g., ALSO BASED UPON THE VEHICLE INTERIOR TEMPERATURE SENSOR, AND/OR THRESHOLD — 138

END — 140

Case: 22-2012    Document: 9    Page: 105    Filed: 10/21/2022



**FIG. 6**



160

162 — START

164 — GENERATING THE MOVABLE VEHICLE COMPONENT COMMAND ON THE DATA COMMUNICATIONS BUS TO MOVE THE AT LEAST ONE VEHICLE COMPONENT ACTUATOR (i.e. SIDEVIEW MIRROR ACTIVATOR, REARVIEW MIRROR ACTIVATOR, SEAT ACTUATOR, STEERING WHEEL TELESCOPING ACTUATOR, STEERING WHEEL TILT ACTUATOR, PEDAL POSITION ACTUATOR), USING THE VEHICLE REMOTE START CONTROLLER AND IN RESPONSE TO THE REMOTE START SIGNAL RECEIVED BY THE RECEIVER

166 — GENERATING THE CLIMATE CONTROL COMMAND ON THE DATA COMMUNICATIONS BUS TO OPERATE THE VEHICLE CLIMATE CONTROL SYSTEM, USING THE VEHICLE REMOTE START CONTROLLER AND IN RESPONSE TO THE REMOTE START SIGNAL RECEIVED BY THE RECEIVER (e.g., ALSO BASED UPON THE VEHICLE INTERIOR TEMPERATURE SENSOR, AND/OR THRESHOLD)

168 — STARTING THE ENGINE USING THE VEHICLE REMOTE START CONTROLLER AND IN RESPONSE TO A REMOTE START SIGNAL RECEIVED BY THE RECEIVER

170 — END

FIG. 7

FIG. 8



*192*

*194* → START

*196* GENERATING THE PARKING BRAKE COMMAND ON THE DATA COMMUNICATIONS BUS TO OPERATE (i.e. ENGAGE OR DISENGAGE) THE AT LEAST ONE VEHICLE BRAKE (i.e. FRONT SET OF BRAKES AND/OR REAR SET OF BRAKES), USING THE VEHICLE REMOTE START CONTROLLER AND IN RESPONSE TO THE REMOTE START SIGNAL RECEIVED BY THE RECEIVER

*198* STARTING THE ENGINE USING THE VEHICLE REMOTE START CONTROLLER AND IN RESPONSE TO A REMOTE START SIGNAL RECEIVED BY THE RECEIVER

*200* GENERATING THE CLIMATE CONTROL COMMAND ON THE DATA COMMUNICATIONS BUS TO OPERATE THE VEHICLE CLIMATE CONTROL SYSTEM, USING THE VEHICLE REMOTE START CONTROLLER AND IN RESPONSE TO THE REMOTE START SIGNAL RECEIVED BY THE RECEIVER (e.g., ALSO BASED UPON THE VEHICLE INTERIOR TEMPERATURE SENSOR, AND/OR THRESHOLD)

END

*202*

*FIG. 9*

US 9,458,814 B2

1

# REMOTE START CONTROL SYSTEM FOR A VEHICLE WITH A BUS CONTROLLABLE BRAKE AND ASSOCIATED METHODS

### FIELD OF THE INVENTION

The present invention relates to the field of remote vehicle starting, and, more particularly, to remote vehicle starting devices and related methods.

### BACKGROUND OF THE INVENTION

Remote vehicle starting systems are widely used to allow a user to start a vehicle before entering the vehicle, so as to allow the engine of the vehicle to warm up to operating temperatures, for example. A typical remote starting system, for example, includes a central processor or controller connected to a starter circuit for the vehicle engine to cause the starter circuit to start the vehicle engine. A typical remote starting system also includes a receiver associated with the controller that cooperates with one or more remote transmitters typically carried by the user as disclosed, for example, in U.S. Pat. No. 4,383,242 to Sassover et al. and U.S. Pat. No. 5,146,215 to Drori. The remote transmitter may be used to operate the remote start system. Also related to remote control of a vehicle function U.S. Pat. No. 5,252,966 to Lambropoulous et al. discloses a remote keyless entry system for a vehicle. The keyless entry system permits the user to remotely open the vehicle doors or open the vehicle trunk using a small handheld transmitter.

Some remote start systems are connected to other vehicle devices to provide functionality in addition to remote starting. Unfortunately, many prior remote start systems needed to be directly connected by wires to individual vehicle devices. In other words, such a remote start system was hardwired to various vehicle components, typically by splicing into vehicle wiring harnesses or via interposing T-harnesses and connectors. The number of electrical devices in a vehicle has increased so that the size and complexity of wiring harnesses also increased. For example, the steering wheel may include horn switches, an airbag, turn-signal and headlight switches, wiper controls, cruise control switches, ignition wiring, an emergency flasher switch, and/or radio controls. Likewise, a door of a vehicle, for example, may include window controls, locks, outside mirror switches, and/or door-panel light switches.

In response to the increased wiring complexity and costs, vehicle manufacturers have reduced the amount of wiring within vehicles to reduce weight, reduce wire routing problems, decrease costs, and reduce complications which may arise when troubleshooting the electrical system. For example, some manufacturers have adopted multiplexing schemes to reduce cables to three or four wires and to simplify the exchange of data among the various onboard electronic systems as disclosed, for example, in "The Thick and Thin of Car Cabling" by Thompson appearing in the IEEE Spectrum, February 1996, pp. 42-45. The Thompson article describes a number of multiplexed networks for vehicles. In particular, the Grand Cherokee made by Chrysler is described as having five multiplex nodes or controllers: the engine controller, the temperature controller, the airbag controller, the theft alarm, and the overhead console. Other nodes for different vehicles may include a transmission controller, a trip computer, an instrument cluster controller, an antilock braking controller, an active suspension controller, and a body controller for devices in the passenger compartment.

A number of patent references are also directed to digital or multiplex communications networks or circuits, such as may be used in a vehicle. For example, U.S. Pat. No. 4,538,262 Sinniger et al, discloses a multiplex bus system including a master control unit and a plurality of receiver-transmitter units connected thereto. Similarly, U.S. Pat. No. 4,055,772 to Leung discloses a power bus in a vehicle controlled by a low current digitally coded communications system. Other references disclosing various vehicle multiplex control systems include, for example, U.S. Pat. No. 4,760,275 to Sato et al.; U.S. Pat. No. 4,697,092 to Roggendorf et al.; and U.S. Pat. No. 4,792,783 to Burgess et al.

Several standards have been developed for vehicle multiplex networks including, for example, the Society of Automotive Engineers "Surface Vehicle Standard, Class B Data Communications Network Interface", SAE J1850, July 1995. Another report by the SAE is the "Surface Vehicle Information Report, Chrysler Sensor and Control (CSC) Bus Multiplexing Network for Class 'A' Applications", SAE J2058, July 1990.

Remote starting of the engine presents additional difficulties compared to some other vehicle control applications. This is so because starting the engine may require certain vehicle conditions are correct prior to starting the engine and while the engine is running with the vehicle unattended. It may also be necessary for a remote starter system to bypass an immobilizer device which is part of the security system of some vehicles. For example, U.S. Pat. No. 5,612,578 to Drew entitled "Vehicle Engine Start Control Apparatus Including Interface Device Facilitating Installation and Related Methods" discloses a remote start system which is hardwire connected via mating plugs for more conveniently bypassing an immobilizer circuit based upon a coded resistance of the ignition key.

A significant advance in remote start control of a vehicle is disclosed in U.S. Pat. No. 7,031,826 to Flick, and assigned to the assignee of the present application. The patent discloses integration of remote start functions in a vehicle include a data communications bus extending throughout the vehicle. In aftermarket embodiments, installation of the receiver and associated controller is greatly simplified as compared to equivalent hard-wired systems.

Also relating to remote starting, U.S. Pat. No. 7,031,826 to Flick, discloses determining a transmission position from the data bus, before permitting remote starting. U.S. Pat. No. 8,061,626, also to Flick, discloses a remote climate control system operable over the data bus in a hybrid vehicle including a combination gas/electric power train, or an electric only vehicle. U.S. Pat. No. 7,046,126, also to Flick, discloses a window control system that operates via remote commands received at the vehicle and sent over the data bus within the vehicle.

Despite advances in vehicle remote control, particularly via communication over the vehicle data bus, further advancements in the field are still desirable.

### SUMMARY OF THE INVENTION

In view of the foregoing background, it is therefore an object of the present invention to provide a remote start system for a vehicle that provides additional functionality and user convenience.

This and other objects, features, and advantages in accordance with the present invention are provided by a remote start control system for a vehicle that includes a data communications bus extending through the vehicle, an engine, at least one vehicle brake being selectively operable

US 9,458,814 B2

3

based upon a parking brake command on the data communications bus, and a vehicle climate control system operable based upon a climate control command on the data communications bus. The remote start system may include a remote start transmitter remote from the vehicle and configured to generate a remote start signal, and a vehicle remote start controller at the vehicle. The vehicle remote start controller may include a receiver configured to receive the remote start signal from the remote start transmitter, and at least one processor cooperating with the receiver. The at least one processor may be configured to, in response to the remote start signal, generate the parking brake command on the data communications bus to operate the at least one vehicle brake, generate the climate control command on the data communications bus to operate the climate control system, and start the engine.

The at least one vehicle brake may include a plurality of vehicle brakes, and the at least one processor may be configured to generate the parking brake command to operate the plurality of vehicle brakes, for example. The at least one vehicle brake may include a pair of front or rear brakes, and the at least one processor may be configured to generate the parking brake command to operate the pair of front or rear brakes. In addition, the at least one processor may be configured to start the engine after generating the parking brake command and before generating the climate control command.

The vehicle may include a vehicle interior temperature sensor in communication with the vehicle remote start controller, and the at least one processor may generate the climate control command on the data communications bus also based upon the vehicle interior temperature sensor, for example. In some applications, the vehicle interior temperature sensor may be coupled to the data bus for communication with the vehicle remote start controller thereover.

The climate control system may include an air conditioning compressor. The at least one processor may be configured to generate the climate control command to activate the air conditioning compressor when an interior temperature sensed from the interior temperature sensor is above a threshold. The climate control system may also include a heater. The at least one processor may be configured to generate the climate control command to activate the heater when an interior temperature sensed from the vehicle interior temperature sensor is below a threshold.

The climate control system may include a ventilation blower. The at least one processor may be configured to generate the climate control command to activate the ventilation blower, for example.

The remote start transmitter may include a cellular telephone. Alternatively, or additionally, the remote start transmitter may be a central monitoring station communicating over the cellular communications network. Of course the remote start transmitter may be provided by a cellphone communicating directly with the vehicle receiver (e.g. Bluetooth or WiFi), indirectly with the vehicle receive via the cellular network, or via a communication path through a central monitoring station.

The remote start controller may in the form of one or more housings, including associated circuitry, added to vehicle after its original manufacture—in other words, the remote start controller may be provided by one or more aftermarket components, considered alone or in cooperation with one or more factory controllers. In other embodiments, the circuitry for the remote start controller may be provided in the vehicle as part of the original factory assembly. In addition, the

4

vehicle remote start controller may be a multi-vehicle compatible remote start controller

A method aspect is directed to a method of operating a remote start control system for a vehicle that includes a data communications bus extending through the vehicle, at least one vehicle brake being selectively operable based upon a parking brake command on the data communications bus, and a vehicle climate control system operable based upon a climate control command on the data communications bus. The method may include, in response to a remote start signal from a remote start transmitter away from the vehicle, generating, using a vehicle remote start controller at the vehicle, the parking brake command on the data communications bus to operate the at least one vehicle brake, generating, using the vehicle remote start controller, the climate control command on the data communications bus to operate the vehicle climate control system, and starting, using the vehicle remote start controller, the engine.

BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a schematic block diagram of a remote start system for a vehicle in accordance with the present invention.

FIG. 2 is a flowchart of a method of operating the remote start system of FIG. 1.

FIG. 3 is a schematic block diagram of an alternative embodiment of a remote start system for a vehicle in accordance with the present invention.

FIG. 4 is a flowchart of a method of operating the remote start system of FIG. 4.

FIG. 5 is a flowchart of another method of operating the remote start system of FIG. 4.

FIG. 6 is a schematic block diagram of a further embodiment of a remote start system for a vehicle in accordance with the present invention.

FIG. 7 is a flowchart of a method of operating the remote climate control system of FIG. 7.

FIG. 8 is a schematic block diagram of a remote start system for a vehicle in accordance with the present invention.

FIG. 9 is a flowchart of a method of operating the remote start system of FIG. 8.

DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

The present invention will now be described more fully hereinafter with reference to the accompanying drawings, in which preferred embodiments of the invention are shown. This invention may, however, be embodied in many different forms and should not be construed as limited to the embodiments set forth herein. Rather, these embodiments are provided so that this disclosure will be thorough and complete, and will fully convey the scope of the invention to those skilled in the art. Like numbers refer to like elements throughout, and prime and multiple prime notations are used to indicate similar elements in alternate embodiments.

Referring initially to FIG. 1, a remote start control system 20 for a vehicle 35 is now described. The vehicle includes a data communications bus 21 extending throughout the vehicle, an engine 24, and a transmission 26 associated with the engine. The engine 24 may be a combustion engine, and the transmission 26 may be an automatic transmission or an electronically controlled manual transmission. A starter circuit 22 is coupled to the data communications bus 21 and to the combustion engine for starting the engine, and may

US 9,458,814 B2

5

include both a starter and a relay or other controller, such as a powertrain controller, for staring the engine.

A transmission actuator circuit **28** is coupled to the data communications bus **21** and to the transmission **26** for operating the transmission, and may include both a transmission actuator and a relay or other controller, such as a powertrain or transmission controller.

The vehicle **35** further includes a vehicle remote climate control system **30** operable based upon a climate control command on the data communications bus **21**. This vehicle remote climate control system **30** may include an air conditioning compressor, a ventilation blower, and/or a heater. The air conditioning compressor may be mechanically operated via a physical link to the engine (i.e. a belt or shaft), or may be electrically operated. The ventilation blower is typically electrically operated. The source of heat for the heater may come from engine waste heat or be electrically generated.

It should be appreciated that the data communications bus **21** may be a digital, serial data communications bus, used to multiplex communications between the various vehicle components. By extending through the vehicle **35**, it should be understood that the data communications bus **21** may physically extend through the vehicle, that is, such as, through both the passenger compartment and the engine compartment. The data bus **21** may include a high speed data bus, low speed data bus, or both within the vehicle.

The transmission **26** has a selectable disengaged position based upon a disengage transmission position command on the data communications bus **21**. By selectable disengaged position, it is meant that the engine **24** is decoupled from the drive wheels such that the vehicle **35** remains stationary while the engine runs. As such, those of skill in the art will understand that the selectable disengaged position may be a park or neutral position. Neutral may be accomplished via the disengagement of a clutch in the transmission from the engine in the case where the transmission **26** is an electronically controlled manual transmission, for example.

A vehicle remote start controller **40** includes a receiver **46** at the vehicle **35**. The vehicle remote start controller **40** includes a central processing unit (CPU) **42** or processor coupled to a bus interface **44**. Of course, there may be more than one CPU **42**, and/or the functions may be shared across multiple CPUs. The bus interface **44** of the vehicle remote start controller **40** is, in turn, coupled to the data communications bus **21** for communications thereover.

The receiver **46** is for receiving a remote start signal, such as, from a remote start transmitter **48** to be carried by a user when away from the vehicle **35**, and configured to transmit the remote start signal. The remote start transmitter **48** may allow for the sending of different remote start signals that cause the vehicle remote start controller **40** to output different start commands on the data communications bus **21** that cause the operation of different vehicle components.

In other embodiments, the remote start transmitter **48** may be a central monitoring station communicating over the cellular communications network. The remote start transmitter **48** may also be provided by a cellphone communicating directly with the vehicle receiver, indirectly with the vehicle receiver via the cellular network, or via a communication path through a central monitoring station.

In some embodiments, the remote start transmitter **48** may have a receiver incorporated therein for two-way communication with the vehicle in some embodiments. Accordingly, the user may be able to access an internal temperature of the vehicle before deciding whether to perform a remote start.

6

The CPU **42**, in response to the receiver **46** receiving the remote start signal, is configured to generate the disengage transmission position command on the data communications bus **21** to select the disengaged position for the transmission **26**. This causes the transmission actuator circuit **28** to shift the transmission **26** to the disengaged position. As will be appreciated by those skilled in the art, the disengaged position may not need to be selected unless the transmission is already in an engaged position. Accordingly, one or more sensors, not shown, may supply the state of the transmission to the vehicle remote start controller **40** in some embodiments.

The CPU **42**, in response to the receiver **46** receiving the remote start signal is also configured to generate the climate control command on the data communications bus **21** to operate the vehicle climate control system **30**. This causes operation of the air conditioning compressor, ventilation blower, and/or heater, as will be appreciated by those of skill in the art. The CPU **42**, in response to the receiver **46** receiving the remote start signal is further configured to start the engine **24** by generating a start signal on the data communications bus **21** for the starter circuit **22** to start the engine.

It should be understood that these functions need not be performed in the order described above. For example, the vehicle remote start controller **40**, via the CPU **42**, may generate the disengage transmission position command on the data communications bus **21** before generating the climate control command. The CPU **42** may generate the disengage transmission position command before starting the engine **24**, but after generating the climate control command. Indeed, these commands may be generated in any order depending on the application, and the order of command generation may be set by the remote start transmitter **48** or the vehicle remote start controller **40** in some applications. Allowing the commands to be generated in different orders may allow easier adaption of the remote start system **20** to different vehicles and different user desires.

The vehicle **35** may include a vehicle interior temperature sensor **32** in communication with the vehicle remote start controller **40**, such as over the data communications bus **21**. In other embodiments, the temperature sensor **32** may be hardwire connected. This vehicle interior temperature sensor **32** senses the temperature of the passenger compartment of the vehicle. The vehicle remote start controller **40** may also generate the climate control command on the data communications bus **21** based upon the vehicle interior temperature sensor **32**. For example, the climate control command may activate the air conditioning compressor if the vehicle interior temperature sensor **32** reports the vehicle interior temperature is above a threshold, and may activate the heater if the vehicle interior temperate is below a threshold. In other embodiments, the climate control system **30** may be activated further based upon an external temperature sensor, not shown, alone or in combination with the internal sensor **32**.

Those of skill in the art will appreciate that the remote start system **20** may be multi-vehicle compatible. More details of multi-vehicle compatible devices may be found in the following references, each of which is incorporated by reference herein in its entirety, and assigned to the assignee of the present invention: U.S. Pat. No. 7,378,945; U.S. Pat. No. 7,369,936; U.S. Pat. No. 7,224,083; U.S. Pat. No. 7,205,679; U.S. Pat. No. 7,091,822; U.S. Pat. No. 7,068,153; U.S. Pat. No. 7,046,126; U.S. Pat. No. 7,031,826; U.S. Pat. No. 7,010,402; U.S. Pat. No. 6,812,829; U.S. Pat. No. 6,756,886; U.S. Pat. No. 6,756,885; U.S. Pat. No. 6,529,124; and U.S. Pat. No. 6,346,876.

US 9,458,814 B2

7

With reference to the flowchart **112** shown in FIG. **2**, a method of operating the remote start system is now described. After the start (Block **114**), the disengage transmission position command is generated on the data communications bus to select the disengaged position for the transmission, using the vehicle remote start controller and in response to the remote start signal (Block **116**). Then, the engine is started using the vehicle remote start controller and in response to the remote start signal (Block **118**). Thereafter, the climate control command is generated on the data communications bus to operate the vehicle climate control system, using the vehicle remote start controller and also in response to the remote start signal (Block **120**). Block **122** indicates the end of the method.

With reference to FIG. **3**, another embodiment of the remote start control system **20'** is now described. The various components shared in common with the remote start control system **20** shown in FIG. **1** operate similarly and need no further description. In this embodiment, one or more window motors **50'** of the vehicle are coupled to the data communications bus **21'**, either directly or through an intervening controller, such as the Body Control Module (BCM). The window motor **50'** operates a window of the vehicle **35'** (i.e. opens, closes, partially opens, partially closes).

In response to receiving the remote start signal via the receiver **46'**, the vehicle remote start controller **40'** and particularly the CPU **42'** is configured to generate the move window command on the data communications bus **21'** to cause the window motor **50'** to move the vehicle window. In response to receiving the remote start signal via the receiver **46'**, the CPU **42'** is also configured to generate the climate control command on the data communications bus **21'** to operate the vehicle climate control system **30'**. In response to receiving the remote start signal via the receiver **46'**, the vehicle remote start controller **40'** is further configured to generate a start command causing the starter circuit **22'** to start the engine **24'**. As explained above, the move window command, climate control command, and start command may be generated in any order. Moreover, the desired window position may be programmable upon installation, or selectable upon remote starting as will be appreciated by those skilled in the art. For example, it may be desirable to slightly open the windows before starting the air conditioning.

It should be appreciated that the vehicle **35'** may have multiple windows, and that therefore multiple window motors **50'** may be coupled to the data communications bus **21'**, and that the vehicle remote start controller **40'** may control some or all of these window motors **50'** in the fashion described above. Moreover, these window motors **50'** may be operated independently of each other by the vehicle remote start controller **40'** (i.e. different windows may be operated differently, such that a pair of windows is opened while a pair of windows remains closed, for example).

With reference to the flowchart **130** shown in FIG. **4**, a method of operating the remote start system **20'** as shown in FIG. **3** is now described. After the start (Block **132**), the engine is started using the vehicle remote start controller and in response to a remote start signal received by the receiver (Block **134**). Thereafter, the move window command is generated on the data communications bus to cause the window motor to move the vehicle window, using the remote start controller (Block **136**). Then, a climate control command is generated on the data communications bus to operate the vehicle climate control system, using the remote start controller (Block **138**). Block **140** indicates the end of the method.

8

With reference to the flowchart **142** shown in FIG. **5**, another method of operating the remote start system **20'** as shown in FIG. **3** is now described. After the start (Block **144**), the move window command is generated on the data communications bus to cause the window motor to move the vehicle window, using the remote start controller and in response to a remote start signal received by the receiver (Block **146**). Then, the engine is started using the vehicle remote start controller and in response to a remote start signal received by the receiver (Block **148**). Thereafter, a climate control command is generated on the data communications bus to operate the vehicle climate control system, using the remote start controller (Block **150**). Block **152** indicates the end of the method.

With reference to FIG. **6**, yet another embodiment of the remote start system **20"** is now described. The various components shared in common with the remote start control system **20** shown in FIG. **1** operate similarly and need no further description. In this embodiment, a vehicle component actuator circuit **51"** that operates a movable vehicle component **52"** is coupled to the data communications bus **21"**. The vehicle component actuator circuit **51"** may include the actuator itself and intervening circuitry or controllers, such as a body control module. The movable vehicle component **52"** may be a vehicle interior component, such as a seat, telescoping and tilting steering wheel, adjustable pedal(s), or a rear view mirror actuator. The movable vehicle component **52"** may also be a vehicle exterior component, such as a side view mirror, wiper blade, or trunk latch, etc.

Here, the vehicle remote start controller **40"**, and particularly, the CPU **42"**, in response to a remote start signal received by the receiver **46"**, is configured to generate the movable vehicle component command on the data communications bus **21"** to move the at least one vehicle component actuator **51"**. The movement of the at least one vehicle component actuator **51"** may be based upon personalized settings for the vehicle component stored at the vehicle, or by the vehicle remote start controller **40"**. Alternatively, the movement of the at least one vehicle component actuator **51"** may be based upon input received via the remote start transmitter **48"**. The vehicle CPU **42"**, in response to the remote start signal, is also configured to generate the climate control command on the data communications bus **21"** to operate the vehicle climate control system **30"**.

The vehicle remote start controller **40"**, and particularly, the CPU **42"**, in response to the remote start signal, is further configured to generate a start signal on the data communications bus **21"** to cause the start circuit **22"** to start the engine **24"**. As explained above, it should be understood that the moveable vehicle component command, climate control command, and start command may be generated in different orders.

With reference to the flowchart **160** shown in FIG. **7**, a method of operating the remote starting system **20"** shown in FIG. **6** is now described. After the start (Block **162**), the movable vehicle component command is generated on the data communications bus to thereby move the at least one vehicle component actuator, using the vehicle remote start controller and in response to the remote start signal being received by the receiver (Block **164**). Thereafter, a climate control command is generated on the data communications bus to operate the vehicle climate control system, using the remote start controller (Block **166**). Then, the engine is started using the vehicle remote start controller and in response to a remote start signal received by the receiver (Block **168**). Block **170** indicates the end of the method.

US 9,458,814 B2

**9**

With reference to FIG. **8**, a further embodiment of the remote start system **20'''** is now described. The various components shared in common with the remote start control system **20** shown in FIG. **1** operate similarly and need no further description. In this embodiment, the vehicle includes at least one vehicle brake **54'''**, although it should be appreciated that the vehicle may have one brake per wheel, rendering the number of vehicle brakes to typically be four. A vehicle brake circuit **53'''** is coupled to the vehicle brake **54'''** for operating the vehicle brake. The vehicle brake circuit **53'''** may include a brake actuator and a braking controller, for example. In other words, the vehicle brake system may of the type generally described as "brake by wire" where instead of a direct hydraulic circuit operated by the driver's foot, the driver's foot pressure is sensed and digital controls are used to then operate the wheel brakes, or driveline brakes for some vehicles.

Here, the vehicle remote start controller **40'''** and particularly, the CPU **42'''**, in response to a remote start signal received by the receiver **46'''**, is configured to generate the parking brake command on the data communications bus **21'''** to cause the vehicle brake circuit **53'''** to operate the at least one vehicle brake **54'''**. The CPU **42'''** is further configured to generate the climate control command on the data communications bus **21'''** to operate the vehicle climate control system **30'''**, in response to the remote start signal. The CPU **42'''** is also configured to generate a start signal on the data communications bus **21'''** to cause the starter circuit **22'''** to start the engine **24'''**, in response to the remote start signal. As explained above, the signals may be generated in different orders.

It should be appreciated that the vehicle remote start controller **40'''** may operate less than all of the vehicle's brakes. For example, the CPU **42'''** of the vehicle remote start controller **40'''** may operate a front pair of brakes, or a rear pair of brakes. In some vehicles, the parking brake function is obtained by use of the rear wheel brakes only. Moreover, those of skill in the art should recognize that operating the vehicle brake **54'''** would typically be engaging the brake, but in some circumstances it may be desirable to disengage the parking brake, for example. Whether the brakes are engaged or disengaged could be a programmable feature, or could be selectable with each remote start selection by the remote transmitter.

With reference to the flowchart **192** shown in FIG. **9**, a method of operating the remote start system **20'''** of FIG. **8** is now described. After the start (Block **194**), a parking brake command is generated on the data communications bus to operate the at least one vehicle brake, using the vehicle remote start controller and in response to the remote start signal (Block **196**). Then, the engine is started using the vehicle remote start controller and in response to the remote start signal (Block **198**). Thereafter, the climate control command is generated on the data communications bus to operate the vehicle climate control system, using the vehicle remote start controller and in response to the remote start signal (Block **200**). Block **202** indicates the end of the method.

As will be appreciated by those skilled in the art, the remote start control system may in the form of one or more housings, including associated circuitry, added to vehicle after its original manufacture—in other words, the remote start controller may be provided by one or more aftermarket components, considered alone or in cooperation with one or more factory controllers. In other embodiments, the circuitry for the remote start controller may be provided in the vehicle as part of the original factory assembly. Accordingly, many

**10**

modifications and other embodiments of the invention will come to the mind of one skilled in the art having the benefit of the teachings presented in the foregoing descriptions and the associated drawings. Therefore, it is understood that the invention is not to be limited to the specific embodiments disclosed, and that modifications and embodiments are intended to be included.

That which is claimed is:

**1**. A remote start control system for a vehicle comprising a data communications bus extending through the vehicle, an engine, at least one vehicle brake being selectively operable based upon a parking brake command on the data communications bus, and a vehicle climate control system operable based upon a climate control command on the data communications bus, the remote start control system comprising:

    a remote start transmitter remote from the vehicle and configured to generate a remote start signal; and

    a vehicle remote start controller at the vehicle and comprising

        a receiver configured to receive the remote start signal from said remote start transmitter, and

        at least one processor cooperating with said receiver and configured to, in response to the remote start signal,

            generate the parking brake command on the data communications bus to operate the at least one vehicle brake,

            generate the climate control command on the data communications bus to operate the climate control system, and

            start the engine.

**2**. The remote start control system of claim **1**, wherein the at least one vehicle brake comprises a plurality of vehicle brakes; and wherein the at least one processor is configured to generate the parking brake command to operate the plurality of vehicle brakes.

**3**. The remote start control system of claim **1**, wherein the at least one vehicle brake comprises a pair of front brakes; and wherein the at least one processor is configured to generate the parking brake command to operate the pair of front brakes.

**4**. The remote start control system of claim **1**, wherein the at least one vehicle brake comprises a pair of rear brakes; and wherein the at least one processor is configured to generate the parking brake command to operate the pair of rear brakes.

**5**. The remote start control system of claim **1**, wherein said at least one processor is configured to start the engine after generating the parking brake command and before generating the climate control command.

**6**. The remote start control system of claim **1**, wherein the vehicle comprises a vehicle interior temperature sensor; and wherein said at least one processor is configured to generate the climate control command on the data communications bus also based upon the vehicle interior temperature sensor.

**7**. The remote start control system of claim **6**, wherein the vehicle interior temperature sensor is coupled to the data bus for communication with said vehicle remote start controller thereover.

**8**. The remote start control system of claim **6**, wherein the climate control system comprises an air conditioning compressor; and wherein said at least one processor is configured to generate the climate control command to activate the air conditioning compressor when an interior temperature sensed from the vehicle interior temperature sensor is above a threshold.

US 9,458,814 B2

11 | 12

**9.** The remote start control system of claim **6**, wherein the climate control system comprises a heater; and

wherein said at least one processor is configured to generate the climate control command to activate the heater when an interior temperature sensed from the vehicle interior temperature sensor is below a threshold.

**10.** The remote start control system of claim **1**, wherein the climate control system comprises a ventilation blower; and wherein said at least one processor is configured to generate the climate control command to activate the ventilation blower.

**11.** The remote start control system of claim **1**, wherein said vehicle remote start controller comprises a multi-vehicle compatible remote start controller.

**12.** The remote start control system of claim **1**, wherein said remote start transmitter comprises a cellular telephone.

**13.** The remote start control system of claim **1**, wherein said remote start transmitter comprises a central monitoring station.

**14.** A vehicle remote start controller for a vehicle comprising a data communications bus extending through the vehicle, an engine, at least one vehicle brake being selectively operable based upon a parking brake command on the data communications bus, and a vehicle climate control system operable based upon a climate control command on the data communications bus, the vehicle remote start controller comprising:

a receiver configured to receive a remote start signal transmitter from a remote start transmitter remote from the vehicle; and

at least one processor cooperating with said receiver and configured to, in response to the remote start signal,

generate the parking brake command on the data communications bus to operate the at least one vehicle brake,

generate the climate control command on the data communications bus to operate the climate control system, and

start the engine.

**15.** The vehicle remote start controller of claim **14**, wherein the at least one vehicle brake comprises a plurality of vehicle brakes; and wherein the at least one processor is configured to generate the parking brake command to operate the plurality of vehicle brakes.

**16.** The vehicle remote start controller of claim **14**, wherein the at least one vehicle brake comprises a pair of front brakes; and wherein the at least one processor is configured to generate the parking brake command to operate the pair of front brakes.

**17.** The vehicle remote start controller of claim **14**, wherein the at least one vehicle brake comprises a pair of rear brakes; and wherein the at least one processor is configured to generate the parking brake command to operate the pair of rear brakes.

**18.** The vehicle remote start controller of claim **14**, wherein said at least one processor is configured to start the engine after generating the parking brake command and before generating the climate control command.

**19.** The vehicle remote start controller of claim **14**, wherein the vehicle comprises a vehicle interior temperature sensor; and wherein said at least one processor is configured to generate the climate control command on the data communications bus also based upon the vehicle interior temperature sensor.

**20.** The vehicle remote start controller of claim **19**, wherein the vehicle interior temperature sensor is coupled to the data bus for communication thereover.

**21.** The vehicle remote start controller of claim **19**, wherein the climate control system comprises an air conditioning compressor; and wherein said at least one processor is configured to generate the climate control command to activate the air conditioning compressor when an interior temperature sensed from the vehicle interior temperature sensor is above a threshold.

**22.** The vehicle remote start controller of claim **19**, wherein the climate control system comprises a heater; and

wherein said at least one processor is configured to generate the climate control command to activate the heater when an interior temperature sensed from the vehicle interior temperature sensor is below a threshold.

**23.** The vehicle remote start controller of claim **14**, wherein the climate control system comprises a ventilation blower; and wherein said at least one processor is configured to generate the climate control command to activate the ventilation blower.

**24.** A method of operating a remote start control system for a vehicle comprising a data communications bus extending through the vehicle, an engine, at least one vehicle brake being selectively operable based upon a parking brake command on the data communications bus, and a vehicle climate control system operable based upon a climate control command on the data communications bus, the method comprising, in response to a remote start signal from a remote start transmitter away from the vehicle:

generating, using a vehicle remote start controller at the vehicle, the parking brake command on the data communications bus to operate the at least one vehicle brake;

generating, using the vehicle remote start controller, the climate control command on the data communications bus to operate the vehicle climate control system; and

starting, using the vehicle remote start controller, the engine.

**25.** The method of claim **24**, wherein the at least one vehicle brake comprises a plurality of vehicle brakes; and wherein generating the parking brake command comprises generating the parking brake command to operate the plurality of vehicle brakes.

**26.** The method of claim **24**, wherein the at least one vehicle brake comprises a pair of front brakes; and wherein the generating the parking brake command comprises generating the parking brake command to operate the pair of front brakes.

**27.** The method of claim **24**, wherein the at least one vehicle brake comprises a pair of rear brakes; and wherein the generating the parking brake command comprises generating the parking brake command to operate the pair of rear brakes.

**28.** The method of claim **24**, wherein the engine is started by the vehicle remote start controller after generating the parking brake command and before generating the climate control command.

**29.** The method of claim **24**, wherein the vehicle comprises a vehicle interior temperature sensor; and wherein the climate control command is generated on the data communications bus also based upon the vehicle interior temperature sensor.

**30.** The method of claim **29**, wherein the climate control system comprises an air conditioning compressor; and wherein the climate control command is generated to acti-

US 9,458,814 B2

13

14

vate the air conditioning compressor when an interior temperature sensed from the vehicle interior temperature sensor is above a threshold.

**31**. The method of claim **29**, wherein the climate control system comprises a heater; and wherein the climate control command is generated to activate the heater when an interior temperature sensed from the vehicle interior temperature sensor is below a threshold.

\* \* \* \* \*